# United States Court of Appeals

## For the First Circuit

No. 02-1384

JOEL A. PATTERSON,

Plaintiff, Appellant,

v.

RICHARD J. PATTERSON,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

Before

Boudin, Chief Judge,

Bownes, Senior Circuit Judge,

and Lynch, Circuit Judge.

Joseph S. Hoppock, with whom Goodnow, Arwe, Ayer, Prigge, Hoppock and Kane, P.C. was on brief for appellant.

Pamela N. Morales, with whom Steven E. Grill and Devine, Millimet & Branch, P.A. were on brief for appellee.

October 9, 2002

**BOWNES**, **Senior Circuit Judge**. Plaintiff-appellant, Joel Patterson ("Joel"), brought common law and statutory claims against his adoptive father, defendant-appellee, Richard Patterson ("Richard"), for breach of fiduciary duty. Joel based his claims on Richard's alleged misappropriation of insurance proceeds following the death of Joel's mother, Penney Patterson ("Penney"). The district court granted the defendant's motion for summary judgment on the grounds that the doctrine of res judicata precludes the plaintiff's claims. We reverse.

## I.  BACKGROUND

### A.  Facts

In reviewing a district court's grant of summary judgment, "we must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).  We recite the facts accordingly.

In 1982 Penney gave birth to her son, Joel.  In 1988, Penney married Richard, who, during that same year, adopted Joel as his son.  Penney subsequently purchased a life insurance policy with a death benefit of $150,000 and named Richard as the primary beneficiary, and Joel as the secondary beneficiary.  Penney and Richard also established a family trust and designated themselves as trustees and principal beneficiaries, and Joel as a residual

-2-

beneficiary. In 1991, Samuel Patterson ("Samuel") was born to Penney and Richard. After Samuel's birth, Penney changed the beneficiary of the life insurance policy so that $100,000 would be paid to Joel individually, and $50,000 to the family trust. This was the last time that Penney herself changed the beneficiaries of the insurance policy.

Shortly after she made these changes, Penney was diagnosed with a malignant brain tumor. Within days of the diagnosis, Penney executed a durable power of attorney that granted Richard the power to change the beneficiary of her life insurance policy. Richard exercised this power on two separate occasions during 1993. The first was on June 11th when he named Penney and himself, in their capacity as trustees for the family trust, as the beneficiaries of the life insurance policy. The second was on July 21st at 6:45 p.m. when Richard substituted himself, in his individual capacity, as the sole beneficiary. Penney died at 7:05 p.m. on that same day.

Following his wife's death, Richard sought payment under the life insurance policy, but the insurance company refused to transfer the funds because of its concerns about Richard's changes to the policy. The insurance company and Richard eventually settled the dispute and agreed to divide the insurance proceeds into two parts. Richard received approximately one-third of the policy benefits in his individual capacity. The remaining two-

thirds were placed into a new trust, the Patterson Children 1994 Trust, of which Richard was the trustee and Joel and Samuel were the beneficiaries.

During the last nine months of Penney's life, Joel went to live with his maternal grandparents, Robert and Mary Jane Lambert. He continued to live with the Lamberts on a permanent basis thereafter. In 1995, the Lamberts brought a petition in New Hampshire probate court for guardianship of Joel. In their petition, the Lamberts claimed to be his sole and primary caretakers. They further alleged that Richard was not paying any support for Joel, and was retaining social security benefits paid to Joel as a result of his mother's death. The Lamberts also claimed that there were significant assets remaining from Penney's estate, and that it would be in Joel's best interest to obtain information regarding these assets.

The probate court ordered the appointment of a guardian ad litem who was "empowered to investigate not only the traditional matters which would be raised in the guardianship concerning the best interests of the child, but also . . . to investigate the financial circumstances, particularly involving the proceeds of life insurance of Joel A. Patterson's late mother, Penney." The probate court ultimately granted guardianship to the Lamberts, and ordered the establishment of a new trust that contained Joel's share of the Patterson Children 1994 Trust. The funds in this new

trust amounted to roughly one-third of the insurance policy benefits--about $50,000 less than Joel would have received had Richard not made any changes to Penney's life insurance policy.

### B. __Procedural History__

In April, 2001, Joel filed a complaint against Richard in New Hampshire Superior Court. Joel alleged that Richard's use of the power of attorney just prior to his mother's death constituted a breach of common law fiduciary duties to Penney, and a breach of common law and statutory fiduciary duties to Joel, as a third party beneficiary. Joel specifically claimed that Richard's breach was evidenced by his changes to the life insurance policy, his negotiated settlement with the insurance company, and his failure to obtain court approval of the settlement as required by section 464-A:42 of the New Hampshire Revised Statutes. These actions allegedly amounted to fraud, misappropriation and conversion. Joel claimed standing pursuant to section 506:7 of the New Hampshire Revised Statutes, which permits children of principals to file claims in the superior or probate court to determine the legality of actions taken under powers of attorney.

Richard properly removed the case to federal district court on the basis of diversity jurisdiction, and then moved for summary judgment on the grounds that he did not breach a fiduciary

duty to Penney, that he owed no fiduciary duty to Joel, that section 464-A:42 was not applicable, that Joel waived his right to challenge Richard's exercise of the power of attorney, and that the Lamberts' guardianship proceeding precluded Joel's claims under the doctrine of res judicata.  The district court granted Richard's motion for summary judgment, relying on res judicata to reach its decision.

## II. **DISCUSSION**

We review grants of summary judgment de novo.  Pure Distribs., Inc. v. Baker, 285 F.3d 150, 154 (1st Cir. 2002).  In cases involving preclusion, federal statutory law requires federal courts "to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."  Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984)(quoting Allen v. McCurry, 449 U.S. 90, 96 (1980)).  Here, Richard contends that the New Hampshire probate court guardianship proceedings bar Joel's current claims.  Therefore, "[w]e look to state law to determine the preclusive effect of a prior state court judgment."  In re Spigel, 260 F.3d 27, 33 (1st Cir. 2001).

Under New Hampshire law, res judicata means "that a final judgment by a court of competent jurisdiction is conclusive upon the parties in a subsequent litigation involving the same cause of action."  Eastern Marine Constr. Corp. v. First S. Leasing, Ltd., 525 A.2d 709, 711-12 (N.H. 1987)(citations omitted).  Furthermore,

res judicata "bars the relitigation of any issue that . . . <u>might have been</u> raised in respect to the subject matter of the prior litigation."  <u>Grossman</u> v. <u>Murray</u>, 681 A.2d 90, 94 (N.H. 1996) (quoting <u>Dennis</u> v. <u>R.I. Hosp. Trust Nat'l Bank</u>, 744 F.2d 893, 899 (1st Cir. 1984) (emphasis in original)).  The parties do not challenge on appeal the finality of the probate court's judgment.  Their arguments instead focus on whether the probate court had jurisdiction to hear Joel's breach of fiduciary duty claims, whether the Lamberts' guardianship petition is the same cause of action as Joel's breach of fiduciary duty claims, and whether Joel was a party to the guardianship proceedings.

## A.  Jurisdiction

Joel argues that the district court erred in ruling that the probate court could have exercised proper subject matter jurisdiction over his breach of fiduciary claims during the guardianship proceedings.  In New Hampshire, "[t]he probate court is not a court of general jurisdiction.  Its powers are limited to those conferred upon it by statute." <u>In re CIGNA Healthcare, Inc.</u>, 777 A.2d 884, 888 (N.H. 2001)(quoting <u>In re Estate of O'Dwyer</u>, 605 A.2d 216, 217 (N.H. 1992)).  By statute, the superior court and probate court have concurrent subject matter jurisdiction over powers of attorney. <u>See</u> N.H. Rev. Stat. Ann. § 547:3(II)(b) (Supp. 2002).  This jurisdiction includes the  power "to determine the legality of acts, proposed acts, or omissions of the agent."  N.H.

Rev. Stat. Ann. § 506:7(III)(b) (Supp. 2002). Joel's claims arise from Richard's use of the power of attorney. Therefore, the district court properly found that the probate court could have exercised subject matter jurisdiction over Joel's claims.

### B. <u>Same Causes of Action</u>

New Hampshire law considers two causes of action to be the same for purposes of res judicata when they arise from the same factual transaction. <u>ERG, Inc.</u> v. <u>Barnes</u>, 624 A.2d 555, 558 (N.H. 1993) ("[t]he term 'cause of action' embraces all theories on which relief could be claimed arising out of the same factual transaction."); <u>Eastern Marine Constr. Corp.</u>, 525 A.2d at 712-13. Although simplistic on its face, the term "factual transaction" is not always easy to define with precision. We note in this regard, that the New Hampshire Supreme Court has used slightly different phraseology when conducting its "factual transaction" analyses. <u>See</u> <u>Brzica</u> v. <u>Trustees of Dartmouth Coll.</u>, 791 A.2d 990, 1000 (N.H. 2002) (factual transaction determined by examining whether previous and current lawsuits "rely upon" the same facts); <u>Goffin</u> v. <u>Tofte</u>, 772 A.2d 896, 898 (N.H. 2001) (factual transaction determined by examining whether "the facts relevant" to previous claim are the same as those relevant to current claim); <u>Marston</u> v. <u>United States Fid. and Guar. Co.</u>, 609 A.2d 745, 748 (N.H. 1992) (factual transaction determined by examining what "the [lower] court had to determine" in each of the two actions); <u>Aubert</u> v. <u>Aubert</u>, 529 A.2d

-8-

909, 912 (N.H. 1987) (factual transaction determined by examining "the purpose" of each action).

When the New Hampshire Supreme Court first articulated its seminal definition of res judicata it found persuasive the Third Circuit's reasoning that two claims arise from the same factual transaction when "[n]o material fact is alleged in action No. 1 that was not alleged in action No. 2."  Eastern Marine Constr. Corp., 525 A.2d at 713 (quoting Williamson v. Columbia Gas & Elec. Corp., 186 F.2d 464, 470 (3d Cir. 1950)).  We find this rendition of the factual transaction analysis to be particularly useful, not only because it incorporates the essence of the other phraseologies, but also because the New Hampshire Supreme Court has continued to rely on it.  See Warren v. Town of E. Kingston, 761 A.2d 465, 469 (N.H. 2000)(two claims do not arise from same factual transaction because they are not "based on the same allegations of fact.").  Moreover, this analysis comports with that used in the Restatement (Second) of Judgments § 24 (1982), which the New Hampshire Supreme Court has repeatedly used to define res judicata.[1]  See Appeal of the Univ. Sys. of N.H. Bd. of Trs., 795 A.2d 840, 843 (N.H. 2002); Shepherd v. Town of Westmoreland, 543

---

[1]The commentary to the Restatement explains that the term "factual transaction" is "not capable of a mathematically precise definition," but that "the relevance of trial convenience makes it appropriate to ask how far the witnesses or proofs in the second action would tend to overlap the witnesses or proofs relevant to the first." Restatement (Second) of Judgments § 24 cmt. b (1982).

A.2d 922, 923 (N.H. 1988); Aubert, 529 A.2d at 911; Eastern Marine Constr. Corp., 525 A.2d at 713. It also is similar to the analysis used by the New Hampshire Supreme Court prior to its adoption of its seminal definition of res judicata. See Concrete Constructors, Inc. v. Manchester Bank, 377 A.2d 612, 614 (N.H. 1977)(determining whether two causes of action are the same by examining "the essential elements" of the parties' pleadings and what the parties are "required to plead and prove.").

Our review of the record indicates that the Lamberts' guardianship petition did not allege the same material facts as those alleged in Joel's breach of fiduciary duty claims. The Lamberts' petition alleged, in relevant part, that they were Joel's primary caretakers, that Richard was not providing Joel any financial support, that the Lamberts believed significant assets remained from Penney's estate, and that it would be in Joel's best interest to have access to information regarding those assets.

In contrast, Joel's claims in this case allege that Richard breached a fiduciary duty to both Penney and Joel by improperly using the power of attorney to change Penney's life insurance policy. The facts surrounding the power of attorney itself, its scope of authority, and Richard's knowledge of Penney's wishes in regards to how it was to be exercised, are material facts to Joel's claim. These same facts, however, were not material to the Lamberts' guardianship petition; nor were they alleged.

-10-

Indeed, the power of attorney was not even mentioned in the Lamberts' guardianship petition.

Joel's claims also involve specific changes to the insurance policy made by Richard just prior to Penney's death. The facts regarding Richard's changes to Penney's life insurance policy were neither alleged by the Lamberts nor material to their guardianship petition. Joel's claims further allege that Richard's settlement with the insurance company and his failure to obtain court approval of the settlement as required by section 464-A:42 evidenced a breach of fiduciary duty. Richard's negotiations and settlement with the insurance company, and the actions he took, if any, to comply with section 464-A:42, were not material facts to the Lamberts' guardianship petition. The petition merely requested information about assets remaining from Penney's estate that could be used for Joel's support. There is simply nothing in the petition, or the record before us, which indicates that the Lamberts' request for information arose from Richard's settlement with the insurance company or his failure to comply with the requirements of section 464-A:42.

We do not find persuasive the district court's reasoning that negotiations between the Lamberts' attorney and Richard's attorney regarding settlement of potential future lawsuits by Joel means that the two causes of action are the same. Although these negotiations took place while the guardianship proceedings were

ongoing, we do not find them significant in this case. Where the complaint and pleadings in the second action are not based on the same underlying factual transaction as the earlier action, we would not find there to be a res judicata effect simply because one party attempted also to settle independent claims as part of a comprehensive global settlement.

We also reject Richard's argument that the two causes of action are the same because the probate court specifically empowered the guardian ad litem to "investigate the financial circumstances" of Penney's life insurance policy. The probate court's order arose from the Lamberts' request for information regarding assets from Penney's estate. As we have already explained, the request for information did not arise from the same factual transaction as Joel's breach of fiduciary duty claims.

Of course, New Hampshire case law also supports, as the district court noted, the modern view that the claim preclusion branch of res judicata encompasses "all theories on which relief could be claimed on the basis of the factual transaction in question," Eastern Marine Const. Corp., 52 A.2d at 712, even though the later asserted theory was not actually articulated in the earlier case. This approach functions as a kind of compulsory joinder of related claims growing out of the same factual predicate. Thus, if the original lawsuit accused a fiduciary of breach of duty in appropriating trust assets, a later suit cannot

-12-

allege simple conversion based upon the same events.  We agree with the district court that the principle is correct under New Hampshire law; but we differ because we think that it does not quite reach the present case.

Rather, as we have already explained, certain of the facts that underpinned the guardianship proceeding would have been relevant in pursuing a fiduciary duty claim; but the bulk of the facts needed for the latter were not part of the guardianship case as actually presented to the probate court.  Admittedly, these are matters of characterization and degree.  But the fiduciary duty claim seems to us to require facts sufficiently different than those offered for a change in guardianship as to make us believe that a New Hampshire court would not regard them merely as two different theories that could be asserted "on the basis of the factual transaction in question."[2]  Id.

We conclude that under New Hampshire law, the Lamberts' guardianship petition and Joel's breach of fiduciary duty claims did not allege the same material facts, and therefore did not arise from the same factual transaction.  Our conclusion is buttressed by the New Hampshire Supreme Court's reasoning in Aubert v. Aubert, 529 A.2d 909 (N.H. 1987).  In that case, a husband brought an

_____

[2]We do not read Grossman, 681 A.2d at 93-94, cited by the district court, as meaning that any common fact automatically makes two claims the same for res judicata purposes.

-13-

action for divorce against his wife on the basis of extreme cruelty. Id. at 911. He alleged that his wife shot him in the head with a revolver, causing permanent facial injuries. Id. The husband was granted a divorce and subsequently filed a separate civil action against his wife alleging negligence and intentional tortious conduct stemming from the same shooting incident. Id. The New Hampshire Supreme Court reasoned that the divorce proceeding and the tort claims were not the same causes of action for purposes of res judicata:

> we think it clear that a civil action in tort is fundamentally different from a divorce proceeding, and that the respective issues involved are entirely distinct. . . . The purpose of a divorce action is to dissolve the marital relationship and effect the legal separation of man and wife, while a tort action is brought to recover compensation for injuries suffered as a result of a civil wrong.

Id. at 911-12.

The court also rejected the argument that the divorce was the same cause of action as the tort claims because alimony can be awarded in divorce cases. The court stated that alimony "does not partake of the nature of either damages or a penalty for misconduct. . . . [It] is an allowance for support and maintenance, having no other purpose and provide[s] for no other object." Id. at 912 (alterations in original) (citations omitted). The same logic applies to a comparison of Joel's tort claims and the

-14-

Lamberts' guardianship petition. The purpose of guardianship proceedings is not to recover compensation for civil wrongs, but rather, "to secure for a minor an environment of stability and security by providing for the appointment of a guardian of the person when such appointment is in the best interests of the minor; and to provide for the appointment of a guardian of the estate for the proper management of the property and financial affairs of the minor." N.H. Rev. Stat. Ann. § 463:1 (Supp. 2002).

Having ruled that Joel's claims are not the same causes of action as the Lamberts' guardianship petition, we need not, and do not, reach the issue of whether Joel was a party to the guardianship proceeding for purposes of res judicata.

## III. <u>CONCLUSION</u>

Joel's breach of fiduciary duty claims are not precluded by res judicata. Richard urges us to affirm the district court's order of summary judgment on a variety of grounds other than res judicata. We decline to do so; we leave the extent and nature of further proceedings in the hands of the district court. The district court's order granting the motion for summary judgment is **VACATED** and the case is **REMANDED** for further proceedings not inconsistent with this opinion. Costs on appeal awarded to Joel Patterson.

So Ordered.