**Elbia E. ARCE–MONTALVO, Plaintiff**

v.

**HOSPITAL BUEN SAMARITANO, INC., Defendant**

No. 04–1375 (SEC)(JA).

United States District Court, D. Puerto Rico.

July 8, 2005.

Carlos E. Vega–Perez, Vega Perez Law Office, Arecibo, PR, for Plaintiff.

Frances R. Colon–Rivera, Saldana & Carvajal, San Juan, PR, for Defendant.

*OPINION AND ORDER*

ARENAS, Chief United States Magistrate Judge.

This matter is before the court on motion for summary judgment filed by the defendant Hospital Buen Samaritano, Inc. (hereinafter "the Hospital") on March 15, 2005. (Docket No. 17.) The plaintiff, Elbia E. Arce Montalvo (hereinafter "Arce") filed an opposition to the Hospital's motion on April 1, 2005, (Docket No. 23), to which the Hospital replied on April 29, 2005. (Docket No. 36.) After considering the arguments of the parties, the applicable law and the evidence of record, the Hospital's motion for summary judgment will be GRANTED.

## I. BACKGROUND

Arce brings the present action against the Hospital pursuant to the American with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (hereinafter "ADA"). (Amended Complaint, Docket No. 2.) The relevant allegations in Arce's amended complaint is that she was hired by the Hospital on December 23, 2002. Arce worked as a Medical Technologist at the Hospital's Medical Laboratory performing all kinds of lab tests and procedures. She claims to have adequately and completely performed all of her job duties. On December 24, 2002 the Hospital requested Arce to sign an employment contract. Such action, Arce claims, was illegal since she had been hired and was requested to start working for the Hospital as a regular employee the day before without any mention of a contract.

The amended complaint also asserts that Arce is an individual with a disability who became a medical technologist through the Vocational Rehabilitation Program of the Commonwealth of Puerto Rico. It is also alleged that from the first day she worked at the Hospital she was treated as a person with a disability by her supervisors

and was not given the same treatment and respect. Arce further alleges that on January 31, 2003, she was terminated from her employment without previous notice. The Hospital allegedly dismissed Arce under the pretext of an error apparently committed by her on January 9, 2003 for which she had not been previously admonished or disciplined. A representative of the Hospital allegedly told Arce at the time of dismissal "that no opportunities should be given to people with disabilities because they did not take advantage of them, and were not appreciative or grateful for such opportunities." (Amended Complaint, Docket No. 2, at 4, ¶ 17.)

According to Arce, her dismissal was in violation of federal and Puerto Rico law since the Hospital engaged in a pattern of unlawful discrimination. She claims to have suffered humiliation which in turn cause her to feel depressed and to seek medical treatment. She also alleges to have suffered severe mental and emotional harm as well as damage to her self esteem. The plaintiff seeks to recover compensatory and punitive damages, costs and attorney's fees. She also seeks injunctive relief and reinstatement to the position from she was illegally terminated.

The Hospital now moves for summary judgment arguing that under the undisputed facts in this case, Arce cannot establish a prima facie case of employment discrimination based on disability. According to the Hospital, Arce was terminated because of her own negligent conduct in handling arterial gas samples which are extremely important to the Hospital and its patients. The Hospital also maintains that Arce is not disabled within the meaning of the ADA and that Arce's employer did not regard her as having a disability. Finally, the Hospital claims that Arce does not have a claim for employment discrimination under Puerto Rico Law No. 44 of July 2, 1985, 1 P.R. Laws Ann. § 501, *et seq.*

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To succeed on a motion for summary judgment, the moving party must show that there is an absence of evidence to support the nonmoving party's position. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial and that a trier of fact could reasonably find in its favor. *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir.2000). The party opposing summary judgment must produce "specific facts, in suitable evidentiary form," to counter the evidence presented by the movant. *López–Carrasquillo v. Rubianes,* 230 F.3d 409, 413 (1st Cir.2000) (quoting *Morris v. Gov't Dev. Bank of P.R.,* 27 F.3d 746, 748 (1st Cir.1994)). A party cannot discharge said burden by relying upon "conclusory allegations, improbable inferences, and unsupportable speculation." *Id.; see also Carroll v. Xerox Corp.,* 294 F.3d 231, 236–37 (1st Cir.2002) (quoting *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.,* 76 F.3d 1245, 1251 (1st Cir.1996)) (" '[N]either conclusory allegations [nor] improbable inferences' are sufficient to defeat summary judgment.").

The court must view the facts in light most hospitable to the nonmoving party, drawing all reasonable inferences in that party's favor. *See Patterson v. Patterson,* 306 F.3d 1156, 1157 (1st Cir.2002). A fact is considered material if it has the potential to affect the outcome of the case under

applicable law. *Nereida–González v. Tirado–Delgado,* 990 F.2d 701, 703 (1st Cir. 1993).

## III. APPLICABLE LAW AND ANALYSIS

### A. *The ADA Claim*

Section 102 of Title I of the ADA states in relevant part that:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). To prevail in her unlawful discrimination claim under the ADA, plaintiff has to prove three things by a preponderance of the evidence: first, she must show that she was disabled within the meaning of the Act; second, she must prove that with or without reasonable accommodation she was a qualified individual able to perform the essential functions of the job; and third, she must show that he suffered an adverse employment action. *Benoit v. Technical Mfg. Corp.,* 331 F.3d 166, 175 (1st Cir.2003) (citing *Carroll v. Xerox Corp.,* 294 F.3d at 237); *see also Criado v. IBM Corp.,* 145 F.3d 437, 441 (1st Cir.1998); *Jacques v. Clean–Up Group, Inc.,* 96 F.3d 506, 511 (1st Cir. 1996).

When a plaintiff is unable to offer direct evidence of a discriminatory animus, the court may apply the familiar *McDonnell Douglas*[1] burden-shifting framework to facilitate the inquiry. *See Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d at 264; *see also Katz v. City Metal Co.,* 87

F.3d 26, 30 n. 2 (1st Cir.1996). Under said scheme,

a plaintiff who suffers from a disability makes out a prima facie case of employment discrimination by demonstrating that she is a member of a protected group who has been denied an employment opportunity for which she was otherwise qualified. Such a showing gives rise to an inference that the employer discriminated due to the plaintiff's disability and places upon the employer the burden of articulating a legitimate, nondiscriminatory reason for the adverse employment decision. This entails only a burden of production, not a burden of persuasion; the task of proving discrimination remains the plaintiff's at all times. Once such a reason emerges, the inference raised by the prima facie case dissolves ... and the plaintiff is required to show ... that the employer's proffered reason is a pretext for discrimination.

*Dichner v. Liberty Travel,* 141 F.3d 24, 29–30 (1st Cir.1998) (citations and footnote omitted).

With this standard in mind, I review the record to determine if summary judgment is warranted.

### 1. Disability Under the ADA

■ The first thing an ADA plaintiff needs to show is that he or she is disabled within the meaning of the Act. The term disability is defined by the ADA as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;[2] (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). In this case, Arce is not claiming to have an actual

---

**1.** *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**2.** To determine whether an employee falls within the scope of this section, the court must apply a three-part test. *Bailey v. Georgia-Pacific Corp.,* 306 F.3d 1162, 1167 (1st

disability under subsection (A) or to have a record of an impairment under subsection (B). She maintains that she is disabled because the Hospital regarded her as having an impairment that substantially limits one or more of her major life activities under subsection (C).

The Supreme Court in *Sutton v. United Air Lines, Inc.* explained that

[t]here are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); *see also Bailey v. Ga.-Pac. Corp.*, 306 F.3d at 1169. The decisive issue in determining whether a plaintiff is disabled because his employer regarded him or her as such, is the perception of the employer with respect to the employee's alleged impairment. *Vázquez v. Salvation Army,*

*Inc.*, 240 F.Supp.2d 150, 154 (D.P.R.2003). Plaintiff "cannot merely show that his employer perceived him as somehow disabled; rather, he must prove that the employer regarded him as disabled within the meaning of the ADA." *Bailey v. Ga.-Pac. Corp.*, 306 F.3d at 1169 (citing *Giordano v. City of New York*, 274 F.3d 740, 748 (2nd Cir. 2001)).

The Hospital first argues that Arce is not disabled under the ADA. While the Hospital recognizes that Arce suffers from Hidden Spina Bifida, scoliosis and facial paralysis, it is the Hospital's position that such physical conditions do not substantially limit any major life activity of Arce. But as stated above, Arce is not claiming to be actually disabled. She maintains that she was regarded as disabled by the Hospital. Thus, to rebut said contention, the Hospital claims that she was never perceived as disabled; that she received the same treatment all other employees at the Hospital received and that in her interview she neither mentioned that she had a disability nor did she request a reasonable accommodation.

In her memorandum of law, Arce merely states in a conclusory manner that the Hospital regarded her as being disabled. Similarly, in her opposing statement of material facts, (Docket No. 24),[3] she hints at the possibility that someone might have regarded her as a person with a disability. But she does so in a conclusory manner

---

Cir.2002). First, the court must determined whether the condition of the plaintiff constitutes a physical or mental impairment. *Id.* (citing *Bragdon v. Abbott*, 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998)). Second, the court must identify the life activity upon which the plaintiff relies to determine whether it is a major life activity. *Bailey v. Ga.-Pac. Corp.*, 306 F.3d at 1167. Finally, the court must conclude that the impairment substantially limits the identified major life activity. *Id.* (citing *Lebrón–Torres v. Whitehall Labs.*, 251 F.3d 236, 239–40 (1st Cir.2001)).

Nevertheless, Arce does not claim to have an actual disability.

**3.** Arce's statement of material facts does not comply with the requirements of Local Rule 56. Specifically, there is no attempt to support the denials or qualifications to the Hospital's uncontested material facts with record citations as required by Local Rule 56(c). Arce simply filed a separate document in which she included certain exhibits. She does not make reference to said exhibits in order to controvert the Hospital's statement of facts. Thus, under Local Rule 56(e), Arce

without providing any evidentiary support. For instance, Arce admits paragraph number 34 of the Hospital's statement inasmuch as she did not inform anyone at the Hospital that she had a disability. (Docket No. 24, at 4, ¶ 34.) She goes on to explain that

> a look at Plaintiff would lead anyone to consider Plaintiff to be a person with a disability, Plaintiff is a 36 years old [sic] female, her height is 4'8", overweight for her stature, with a genetic deformation in her neck like if there were fusion in the cervical vertebrae with poor sideways movement of the head, she has facial paralysis which limits her expressions, her walk is kind of slow and she is a very shy person.

(*Id.*) Similarly, in admitting paragraphs number 44 and 45, Arce states that her conditions are not limiting to her and that while she does not consider herself a disabled individual, other people *may* regard her as disabled. (*Id.* at 5, ¶¶ 44–45.) Finally, paragraph 14 of Arce's Unsworn Statement Under the Penalty of Perjury states the following:

> I never requested any reasonable accommodation from Buen Samaritano because I could perform my job functions, duties and responsibilities without it, for I don't consider myself a disable [sic] person, but because of my physical appearance I was considered to be disable and treated as a disable [sic] person by defendant's personnel.

(Docket No. 29, Ex. 1, at 3, ¶ 14.)

It is clear from such evidence that Arce has not presented sufficient competent evidence to demonstrate the existence of a factual controversy regarding her contention that she was regarded as a disabled individual. She conclusorily states that she was treated as disabled by the personnel at the Hospital and even mentions that one look at her would lead anyone to consider her as a person with a disability. But she uses the term disability loosely. As stated above, she needs to show that her employer regarded her as disabled within the meaning of the ADA. *Sullivan v. Neiman Marcus Group, Inc.*, 358 F.3d 110, 118 (1st Cir.2004). In other words, that the Hospital regarded her as having an impairment which substantially limited one or more of her major life activities. At most, what the record shows and her statements tend to demonstrate is that because of her physical appearance, someone *might* have considered Arce as having a physical impairment. But that is not enough. She does not identify the major life activities[4] she claims the Hospital believed were substantially limited[5] by her impairments. *See Thompson v. Holy Family Hosp.*, 121 F.3d 537, 541 (9th Cir.

has not properly controverted the Hospital's Statement of Material Facts which are now by operation of said rule deemed admitted.

4. Major life activities are those that are of "central importance to ... daily [life]." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

5. The Equal Employment Opportunity Commission defines the concept "substantially limits" as follows:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1)(i)-(ii). And in determining whether an impairment substantially limits a major life activity the following factors must also be considered: "(i) [t]he nature and severity of the impairment; (ii)[t]he duration or expected duration of the impairment; and (iii)[t]he permanent or long term impact, or the expected permanent, or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2)(i)-(iii).

1997) (quoting *Gordon v. E.L. Hamm & Assoc., Inc.*, 100 F.3d 907, 913 (11th Cir. 1996)) ("As with real impairments, ... a perceived impairment must be substantially limiting and significant.") All we have here is bare speculation for Arce fails to point to any specific conduct from her co-workers or supervisors from which an inference can be made that she was regarded as disabled.[6] Because Arce has failed to present sufficient evidence that she was regarded as disabled by the Hospital, she cannot succeed in her unlawful discrimination claim under the ADA since she is not disabled within the meaning of the ADA. *See Mahon v. Crowell*, 295 F.3d 585, 592 (6th Cir.2002) (upholding the entry of summary judgment against a plaintiff who was not able to show that the employer had any mistaken beliefs against him); *see also Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 798 (9th Cir.2001). The Hospital's motion for summary judgment must therefore be GRANTED.

### 2. Legitimate Non–Discriminatory Reasons

 Having concluded that Arce is not disabled within the meaning of the ADA, it follows that her unlawful discrimination claim fails as a matter of law. I only add the following. After a careful review of the record it appears that even if I were to assume that Arce established a prima facie case of disability discrimination, she still cannot survive summary judgment inasmuch as the Hospital has advanced legitimate non-discriminatory reasons for Arce's termination. Said reasons Arce has not been able to disprove as pretextual. It must also be kept in mind that because Arce failed to properly controvert the Hospital's statement of material facts, the court has deemed said facts admitted for purposes of this discussion. Local Rule 56(e).

The Hospital maintains that Arce did not perform up to the required standard of care with respect to the handling of arterial blood gas sample. The Hospital submits that on January 9, 2003, three technicians gave Arce samples of arterial gases for her to process. (Defendant's Statement of Material Facts, Docket No. 18, at 6, ¶ 22.) Arce did not comply, instead she told these technicians that they needed to wait until she was finished with other samples. (*Id.* ¶ 23.) She also invited the technicians to process the arterial gas samples themselves to which they replied that they were not authorized to do so. (*Id.* at 7, ¶¶ 24–25.) The technicians waited at the lab where Arce ignored their requests and continue to work on other samples. (*Id.* ¶ 26.) The three technicians then went to the emergency room to continue working to give Arce time to process the samples. (*Id.* ¶ 28.) When they came back, Arce still had not processed the samples even though they were STAT[7] and required

---

**6.** It is noteworthy that Arce alleges in her complaint and in her memorandum of law that Nina Salas at some point told her something along the lines of "no opportunities should be given to people with disabilities because they did not take advantage of them, were not appreciative or grateful of such opportunities." (See Amended Complaint, Docket No. 2, at 4, ¶ 17 and Arce's Memorandum of Law, Docket No. 23, at 3.) The Hospital denies that such statement was ever made (see Defendant's Statement of Material Facts, Docket No. 18, at 11 n. 1) and Arce does not submit any evidence to support her allegation

that such statement was ever made. Curiously, she does not even mention said remark in her Unsworn Statement under the Penalty of Perjury. (Docket No. 29, Ex. 1.)

**7.** STAT means that the processing of such samples require immediate attention. In the case of arterial blood gas samples they need to be process within a period of 15 minutes or less or a patient's life could be in jeopardy. (Defendant's Statement of Material Facts, Docket No. 18, at 4–5, ¶¶ 15–16.) Arce knew this because she received training in the Chemical Department and read the Manual of

immediate processing. (*Id.* ¶ 29.) She processed the samples at issue more than fifteen minutes after she received them thus potentially putting patients' lives in jeopardy. (*Id.* at 8, ¶ 30.) After an investigation of the incident in late January, 2003, the Hospital determined that Arce had been negligent in the handling of the arterial gas samples and that for such reason she was terminated. (*Id.* ¶ 31–32.)

In an attempt to show that the reasons advanced are a pretext, Arce states in her Unsworn Statement Under the Penalty of Perjury that while she admits that arterial gas samples are STAT and should be processed promptly, that was not always the way such samples were processed at the Hospital. (Docket No. 29, Ex. 1, at 1–2, ¶ 6.) She recalls that at one point during the week of January 12 to January 17, 2003, the two machines used to process the arterial gas samples were down and that said samples were not processed at the Hospital's lab. (*Id.* ¶ 7.) Instead, they were preserved in ice until enough samples had been taken and then sent to the laboratory of Hospital San Carlos in Moca. (*Id.* ¶ 8.) Arce also stated that the drive to Hospital San Carlos takes longer than fifteen minutes. (*Id.* ¶ 9.) Finally, she maintains that the situation of having both machines down at the same time happened with some frequency at the Hospital. (*Id.* ¶ 12.)

The Hospital ripostes submitting evidence that even though the common practice is to process arterial gas samples within fifteen minutes, if there are unusual circumstances they can be process within thirty minutes if placed on ice and still get accurate results. (See Reply to Plaintiff's Statement of Material Facts, Docket No.

35, at 2.) The Hospital concedes that when both machines are down, they process the arterial gas samples at Hospital San Carlos in Moca. (*Id.*) The Hospital denies, however, that Hospital San Carlos is more than fifteen minutes away from the Hospital. In addition, the Hospital submits that having both machines down at the same time is an unusual circumstance and presents evidence that in the year 2003, there were only seven days in which both machines were down at the same time. (*Id.* at 3–4.)

It appears from this evidence that the day in which Arce failed to timely process the arterial blood gas samples and for which she was later terminated, is not one of those days in which both machines were down. (*Id.* at 5.) There is no evidence in the record that there were any unusual circumstances preventing Arce from processing the arterial gas samples in a timely manner. And the Hospital has explained in detail its policy when such unusual circumstances arise. Also, while there might be a dispute as to the time it takes to drive to Hospital San Carlos, whether is fifteen minutes or longer,[8] such factual dispute is not in relation to any material facts. In this case it is irrelevant whether it takes more than fifteen minutes. There is no dispute that on January 9, 2003, Arce had the ability to timely process the arterial gas samples at issue in this case and that her failure to do so was the reason for her termination. In view of the foregoing, I find that Arce has not presented sufficient evidence to create a factual dispute worthy of a trial in relation to her claim that the legitimate non-discriminatory reasons advanced by the Hospital are a mere pretext

---

Procedures which explained how to process arterial gas samples. (*Id.* at 3–4, ¶¶ 10–11.)

**8.** I note that the Hospital submitted evidence that the samples can be process within thirty

minutes if preserved with ice. Arce claims that it takes more that fifteen minutes to drive to Hospital San Carlos. That does not mean that it takes more than thirty minutes.

for disability discrimination. Therefore, even assuming that she is disabled under the ADA and that she established a prima facie case of discrimination, summary judgment in favor of the Hospital is still warranted. The Hospital's motion for summary judgment is GRANTED.

### B. *State Law Claims*

■ To the extent Arce's amended complaint can be read as properly asserting supplemental jurisdiction for causes of action under the laws of the Commonwealth of Puerto Rico, such causes of action must be dismissed inasmuch as the claim under which this court had original jurisdiction will be dismissed. *See González–De–Blasini v. Family Dep't,* 377 F.3d 81, 89 (1st Cir.2004) ("Under 28 U.S.C. § 1367, '[a] district court may decline to exercise supplemental jurisdiction' if 'the district court has dismissed all claims under which it has original jurisdiction.' "); *see also Claudio–Gotay v. Becton Dickinson Caribe, Ltd.,* 375 F.3d 99, 104–05 (1st Cir.2004), *cert. denied,* —— U.S. ——, 125 S.Ct. 1064, 160 L.Ed.2d 1067 (2005); *Rodríguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1177 (1st Cir.1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims."). Dismissal of said causes of action is without prejudice.

### IV. CONCLUSION

In view of the above, the Hospital's motion for summary judgment is hereby GRANTED and Arce's amended complaint is dismissed in its entirety. Dismissal of Arce's ADA claim is with prejudice. Dismissal of state law causes of action is without prejudice. The Clerk is to enter judgment accordingly.

- SO ORDERED.