# United States Court of Appeals
## For the First Circuit

No. 09-1469

MICHAEL C. DILLON,

Plaintiff, Appellant,

JENNIFER KRESGE,

Plaintiff,

v.

SELECT PORTFOLIO SERVICING ET AL.,

Defendants, Appellees,

PMI GROUP, INC.,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph N. Laplante, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin and Howard, Circuit Judges.

Kevin Demko, with whom Richard H. Frankel was on brief, for appellant.
William P. Breen, Jr., with whom Dorothy A. Davis and Eckert Seamans Cherin & Mellott, LLC were on brief, for appellees.

January 13, 2011

**LYNCH**, **Chief Judge**.  In a New Hampshire state court action, Michael Dillon received an injunction against Select Portfolio Servicing (SPS) and associated entities that had engaged in illegal practices in seeking to foreclose upon his home mortgage.  SPS and its associates did not obey the terms of the state court's order, and Dillon successfully moved for contempt and received relief.

In this later litigation, begun in a new lawsuit in New Hampshire state court and removed to federal court, Dillon alleges continued legal violations arising from the same facts by the same defendants as in the first suit but now seeks to add damages claims under new theories.  The district court granted summary judgment to the defendants, holding that res judicata precludes this action.  Applying New Hampshire law, we affirm.

I.

In March 2001, Dillon borrowed $100,300 from a division of Superior Bank, securing the debt with a mortgage on his home in Manchester, New Hampshire.  Dillon made monthly mortgage payments to Superior Bank from May 2001 until July 2001 without incident.  He made his August 2001 payment late, but included the required 5% late fee with the payment.  Dillon sent his September and October 2001 payments to Superior Bank.  On October 1, 2001, Superior Bank transferred the mortgage's servicing rights to SPS, then known as

-2-

Fairbanks Capital Corporation.[1]  A series of disputes ensued between Dillon and SPS, which led to both the preceding state court lawsuit and this lawsuit.

These disputes began immediately after the transfer. Neither SPS nor Superior Bank informed Dillon of the transfer until after the deadline for the October 2001 payment, but SPS nonetheless assessed late fees on the September and October 2001 payments Dillon initially sent to Superior Bank.  SPS also secured an insurance policy on Dillon's home and began charging him premiums even though Dillon had provided proof of pre-existing insurance in accordance with the mortgage agreement.  Beginning in January 2002, moreover, SPS began assessing fees, in varying and sometimes undisclosed amounts, in excess of the fees provided in the loan.

Dillon contested these actions in communications with SPS representatives, but his efforts were rebuffed.  On January 28, 2002, Dillon made his January mortgage payment along with what he considered the appropriate 5% late fee.  Dillon made a single payment in April 2002 for his February, March, and April monthly payments, along with 5% late fees for the February and March payments.  He did not pay the additional fees that SPS demanded accompany these payments.  SPS accepted the payments, as well as

---

[1]    For ease of exposition, we refer to this entity as "SPS" throughout the opinion.

Dillon's monthly payment for May 2002, but it refused to accept Dillon's payments thereafter. In a June 2002 letter, SPS notified Dillon that it intended to accelerate the balance of the loan and foreclose on his mortgage.

In the months before this June 2002 letter, Dillon alleges, representatives from SPS called his home and cell phone "almost continuously during the day and evening," saying that there was a pending foreclosure action against him. Shortly before he received the notice of pending foreclosure, Dillon filed a formal complaint with the New Hampshire Banking Department. Initially, the Banking Department persuaded SPS not to act on its intent to foreclose on Dillon's mortgage given the payment dispute. On December 23, 2003, however, SPS notified Dillon through its counsel that his home would be sold at a foreclosure auction on January 26, 2004.

During the course of these disputes, SPS and its legal counsel, Harmon Law Offices (Harmon), were subject to separate class action lawsuits concerning their loan servicing and debt collection practices. Dillon opted out of the lawsuit against Harmon on October 28, 2003. He did not opt out of the lawsuit against SPS, however, until shortly before the final approval of a settlement on May 13, 2004. A preliminary settlement agreement, reached on November 14, 2003, barred class members from bringing any claims against SPS and affiliated parties except for those

-4-

asserted in an effort to defeat any pending foreclosure action. Dillon concedes that he was subject to the terms of this preliminary agreement until he opted out of the class.

In January 2004, shortly after he received the foreclosure notice, Dillon filed the petition in New Hampshire Superior Court we referred to earlier, seeking an injunction against foreclosure and other remedies. In his petition, Dillon alleged that SPS had engaged in predatory, harassing, and wrongful conduct. He alleged that (1) SPS was engaged in ongoing improper accounting practices and had wrongfully assessed late fees, misapplied payments, and misreported his balance, (2) SPS representatives had harassed him in combative and incessant phone calls, (3) the pending foreclosure action had prompted the paying tenants in his home to vacate the premises, leaving him with no source of income, and (4) SPS had failed to take reasonable steps to ensure that a reasonable price would be obtained at the planned mortgage sale.

The petition requested that the Superior Court enjoin the foreclosure sale, order the defendants to provide Dillon with an accounting of his arrearage and an opportunity to cure and reinstate the mortgage, and order "such other and further relief" as it "deem[ed] equitable and just." The petition named as defendants Fairbanks Capital Corporation, LaSalle National Bank Association, Merrill Lynch Mortgage Capital Investors, and Harmon.

Fairbanks Capital Corporation, as noted previously, is the former name of SPS. The Superior Court issued a temporary restraining order and, after a hearing, a preliminary injunction against actions in furtherance of the foreclosure sale.

Before proceeding to a bench trial, the Superior Court dismissed all claims against Harmon. The entity conducting the foreclosure sale on behalf of SPS, Harmon had sent Dillon multiple letters scheduling and rescheduling the foreclosure sale, including after the Superior Court's issuance of the temporary restraining order. The Superior Court held that Dillon no longer possessed any substantive claims against Harmon, as the preliminary injunction issued by the court precluded Harmon from taking further action against Dillon until after the resolution of the lawsuit.

On July 1, 2005, the Superior Court entered a permanent injunction against the remaining defendants. The court found that there was "no doubt that [SPS's] sleight of accounting resulted in improper assessments against plaintiff that, in turn, resulted in the 'default' and the acceleration of the mortgage." Dillon v. Fairbanks Capital Corp., No. 04-E-25, slip op. at 2 (N.H. Super. Ct. July 1, 2005). It found that Dillon's conduct "was not contributory, as he should never have been placed in default to begin with." Id. The defendants, the court held, "created a predatory scheme of penalties generating the default, contrary to the documents signed by the parties." Id.

The permanent injunction included three requirements. First, it enjoined the defendants from "pursuing any foreclosure of plaintiff's property based on the default declared in June 2002." Id. at 4. Second, it enjoined the defendants to "allow plaintiff an opportunity to reinstate the loan by resuming payments without penalties as of August 1, 2005." Id. Third, it enjoined the defendants to "send a separate accounting to plaintiff, again without penalties, of the amounts it has paid for force placed insurance from March, 2002 through the present and for taxes paid on the property." Id. The court stated that "[a]ll other requests by the parties are denied, as they have not been pleaded." Id.

Shortly thereafter, Dillon returned to the Superior Court seeking an order of contempt or, in the alternative, a clarification of the court's prior order. On August 25, 2006, the Superior Court found SPS in contempt of its order of July 1, 2005. It held that SPS had (1) failed to provide Dillon with an opportunity to reinstate his loan because it had not provided him with accurate billing statements, (2) continued to assess late fees and charges for alleged missed payments, and (3) failed to clarify its reclassification of past payments between interest and principal and thus presumably violated the court's order that it allow Dillon to reinstate his loan without penalty. In the contempt order, the court reiterated the requirements of the preliminary injunction granted on July 1, 2005.

In December 2006, Dillon and his fiancee Jennifer Kresge filed this subsequent action in New Hampshire Superior Court, which was removed to federal court on the basis of diversity. The complaint named as defendants SPS, Harmon, Merrill Lynch Mortgage Investors, Merrill Lynch Mortgage Capital, LaSalle Bank National Association, and PMI Group, Inc. Dillon does not dispute that these are the same defendants he named in his initial action, with the exception of the addition of PMI Group, Inc.[2] The complaint listed twenty-four counts, including violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. It also enumerated state statutory and common-law claims including breach of contract, negligence, infliction of emotional distress, fraud, misrepresentation, defamation, unfair and deceptive commercial practices, unfair collection practices, interference with advantageous relations, conspiracy, and avoidance of note.

The district court dismissed all claims against PMI Group, Inc., all claims brought by Kresge for lack of standing, and a few claims Dillon conceded should be dismissed, including his

---

[2] The prior action named "LaSalle National Bank Association" rather than "LaSalle Bank National Association" and "Merrill Lynch Mortgage Capital Investors" rather than "Merrill Lynch Mortgage Capital, Inc." and "Merrill Lynch Mortgage Investors." Dillon does not contest that these different identifications of the same parties are immaterial.

avoidance of note claim. See Dillon v. Select Portfolio Servicing, Inc., No. 07-0070, 2009 WL 242912, at *1 & n.1 (D.N.H. Feb. 2, 2009). It later granted summary judgment on the remaining claims on the ground that they were precluded by res judicata. Id. at *1. Dillon timely appealed the district court's grant of summary judgment.

## II.

We review a district court's grant of summary judgment on res judicata grounds de novo, accepting as true all well-pleaded facts and drawing all reasonable inferences in favor of the party opposing summary judgment. Sutliffe v. Epping Sch. Dist., 584 F.3d 314, 325 (1st Cir. 2009). The burden of establishing the affirmative defense of res judicata rests on the defendants. SBT Holdings, LLC v. Town of Westminster, 547 F.3d 28, 36 (1st Cir. 2008).

Under federal law, a state court judgment receives the same preclusive effect as it would receive under the law of the state in which it was rendered. Sutliffe, 584 F.3d at 326. New Hampshire's law of res judicata bars re-litigation of matters actually decided and matters that could have been litigated in an earlier action when three conditions are met. Id. at 327. First, the parties in both actions must be the same or in privity with one another. Id. Second, the same cause of action must be before the

court in both instances.  Id.  Third, the first cause of action must have resulted in a final judgment on the merits.  Id.

Dillon's claims on appeal only concern the second of these three conditions--the same cause of action condition.  He makes three arguments.  First, Dillon argues that he could not have brought his present claims in the first action because he was then subject to the preliminary settlement in the class action against SPS.  Second, Dillon argues that his present claims arose after he filed the first action and thus constitute a separate cause of action.  Third, Dillon argues that he could not have raised his avoidance of note claim during the first action because the defendants had falsely represented during that action that they owned the note.  The record does not support these arguments.

A.        Class Settlement Claim

Dillon's first argument fails because it has been waived. In his complaint, Dillon did not argue that the preliminary settlement of the class action against SPS prevented him from bringing his present claims in the first action.  He first raised this argument in a motion for reconsideration of the district court's grant of summary judgment.  When a party makes an argument for the first time in a motion for reconsideration, the argument is not preserved for appeal.  Loquidice v. Metro. Life Ins. Co., 336 F.3d 1, 7 (1st Cir. 2003).  At any rate, Dillon does not dispute that he had enough time to add legal claims for damages between the

-10-

time of his withdrawal from the SPS plaintiff class and the hearing in the first action.  He argues only that doing so would have risked frustrating the court.

B.          Separate Cause of Action Argument

Dillon's second argument requires more analysis.  Under New Hampshire law, two causes of action are the same for res judicata purposes when they arise from the same factual transaction.  Sutliffe, 584 F.3d at 327.  A second suit that contains additional factual allegations does not necessarily arise from a different factual transaction under New Hampshire law.  Id. Claims arise from the same transaction if "[n]o material fact is alleged in action No. 1 that was not alleged in action No. 2." Id. (alterations in original) (quoting Patterson v. Patterson, 306 F.3d 1156, 1159-60 (1st Cir. 2002)).  A plaintiff's desire to present new grounds or theories of a case in a subsequent action is not relevant to this transactional analysis.  See id.

As we noted in Sutliffe, the New Hampshire Supreme Court has repeatedly defined res judicata with reference to the Restatement (Second) of Judgments § 24.  Id. at 327 n.7.  That Section states that a factual transaction "connotes a natural grouping or common nucleus of operative facts."  Restatement (Second) of Judgments § 24 cmt. b (1982).  It states further that "[a]mong the factors relevant to a determination whether the facts . . . constitute a single claim are their relatedness in time,

-11-

space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes." Id. Under New Hampshire law, a factual transaction may include events that occur after the initiation of a lawsuit. See Sutliffe, 584 F.3d at 328 (citing cases).

Dillon has not raised a material fact in this action that he did not allege in the prior action. In his state court complaint, Dillon alleged that the defendants engaged in a range of wrongful conduct culminating in their effort to foreclose upon his mortgage. That conduct included, Dillon alleged, improper accounting practices, wrongful assessment of fees, misapplication of payments, inaccurate mortgage statements, and harassing telephone calls. In his federal court complaint, Dillon accompanied these same allegations with the assertion that the defendants continued engaging in this improper behavior. Dillon alleges that SPS continued to harass him after the Superior Court initially granted his application for a temporary restraining order and continued to provide inaccurate statements, assess improper penalties, misapply payments, and improperly report the foreclosure to Dillon's credit report after the Superior Court issued a permanent injunction.

Like the new factual allegations at issue in Sutliffe, the new factual allegations at issue here reflect a continuation of the wrongful conduct alleged in the state court action. Dillon

-12-

raised most of these new factual allegations in his motion for contempt in the state court action. In that motion, Dillon alleged that the defendants provided inaccurate statements, assessed improper penalties, misapplied fees, and improperly reported the foreclosure to Dillon's credit report in violation of the court's permanent injunction. These claims arise from the same pattern of behavior Dillon challenged in his state court complaint. Dillon's contempt motion could have but did not mention the alleged harassment that occurred after the Superior Court granted his motion for a temporary restraining order. Nevertheless, that allegation also falls within the pattern of conduct Dillon alleged in his state court complaint.

To his credit, Dillon acknowledged before the district court that he could have brought the claims in the present action in his state court action. He explained that he did not bring the additional claims because of strategic concerns and his shifting theory of the claims available to him in his case. He did not argue before the district court, or before this court, that any of the new factual allegations were materially different from those he had previously alleged. As the district court held, "The surest indication that this case asserts the same 'cause of action' as its state-law antecedent is Dillon's exclusive reliance on the Superior Court's findings and rulings on his claims there as sufficient proof of each of his claims here." Dillon, 2009 WL 242912, at *5.

In an effort to avoid this conclusion, Dillon argues that under New Hampshire law, res judicata does not preclude a second action for damages when the first action sought injunctive relief. New Hampshire courts have rejected this argument, which is inconsistent with New Hampshire's well-established law on the second res judicata condition. See E. Marine Const. Corp. v. First S. Leasing, Ltd., 525 A.2d 709, 713-14 (N.H. 1987) (holding that where an initial suit sounded in equity and a second suit sought legal relief, res judicata bars the second action when both suits derive from the same factual transaction).

Dillon nonetheless invokes New Hampshire and federal cases that have allowed claims for damages in a second action after the plaintiff received injunctive relief in a first action involving different transactions. His citations to these cases are inapposite and ignore that under New Hampshire preclusion law, the analysis goes to the scope of the transaction at issue in the first action, not the forms of relief sought. The cases Dillon cites each involve different transactions and do not turn on the type of relief sought. See, e.g., Grossman v. Murray, 681 A.2d 90, 94 (N.H. 1996) (holding that claims were not precluded because they arose after an initial bankruptcy proceeding and could not have been raised in that proceeding under bankruptcy rules).

Dillon raises three additional arguments, all for the first time on appeal. Because these arguments were not raised

before the district court, they are waived.  See In re New Motor Vehicles Canadian Exp. Antitrust Litig., 533 F.3d 1, 6 (1st Cir. 2008).  At any rate, each argument fails.

First, Dillon argues that Sutliffe misapplied New Hampshire law in holding that a factual transaction may include conduct that postdates the complaint in the first action.  He relies on two New Hampshire Supreme Court decisions, Schwartz v. State Department of Revenue Administration, 606 A.2d 806 (N.H. 1992) and In re Alfred P., 495 A.2d 1264 (N.H. 1985).  These decisions each concern discrete acts that postdated a complaint; they do not establish a transactional barrier when a plaintiff files a complaint.  See Schwartz, 606 A.2d at 809 (finding that each time an illegal tax is imposed, a new cause of action arises); In re Alfred P., 495 A.2d at 1265-66 (finding that an action for involuntary commitment was not precluded by res judicata because the second action involved different specific acts).

Second, Dillon seeks to distinguish Sutliffe by arguing that unlike the plaintiffs in that case, he did not introduce the post-complaint evidence during the first action.  As an initial matter, this claim misstates the facts in Sutliffe.  We made clear that "[a]lmost" all--but not all--of the post-complaint evidence in that case had been presented to the state court.  See Sutliffe, 584 F.3d at 328-29.  Even if Dillon had described the facts in Sutliffe correctly, his assertion would still be irrelevant.  The issue here

-15-

is whether Dillon raises a fact beyond the factual <u>transaction</u> that he pleaded in the state action, not whether he raises a fact beyond the particular instances identified in the state action.

Third, Dillon argues that the factual allegations that postdate the state court's grant of permanent injunctive relief must give rise to a new cause of action. Dillon contends that a contrary rule would have required him to amend his complaint during the contempt proceeding and thereby transgress the limited scope of contempt under New Hampshire law. This argument misses the mark. The only factual allegations Dillon raises that postdate the state court's grant of permanent injunctive relief concern ongoing conduct in violation of that injunctive relief, matters which he raised in the New Hampshire courts. That Dillon then chose not to raise the new legal theories he now advances for additional relief does not help his cause. The pattern of factual allegations that yielded the permanent injunction is the same pattern that prompted a contempt motion alleging violations of that permanent injunction. <u>See</u> Restatement (Second) of Judgments § 24 cmt. b.

C.        <u>Avoidance of Note Claim</u>

Dillon contends that even if the remainder of his claims are barred by res judicata, his purported avoidance of note claim falls under an exception to that doctrine. The Restatement (Second) of Judgments provides that "a defendant cannot justly object to being sued on a part or phase of a claim that a plaintiff

failed to include in an earlier action because of the defendant's own fraud." Restatement (Second) of Judgments § 26 cmt. j. Dillon argues that the defendants have misrepresented that SPS owned his mortgage note. Dillon presents no evidence that SPS does not own the note, but points to the defendants' ongoing failure to produce proof of ownership.

This claim fails because it has been waived. Dillon conceded before the district court that his avoidance of note claim could not survive the defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6). He made no argument before the district court that this claim, although previously conceded, remained viable. Nor did Dillon make an argument that this claim, even if it remained viable, would not be precluded because of his allegation that SPS committed fraud. Because Dillon made neither of these arguments before the district court, they are waived on appeal. See In re New Motor Vehicles, 533 F.3d at 6. At any rate, Dillon does not explain how he may concede a count and then seek to revive it to avoid res judicata.

## III.

The judgment of the district court is affirmed.