Rockingham
No. 82-073

WALTER J. MORRILL & a.

v.

ROBERT WEBB

May 6, 1983

277

*Shaines, Madrigan & McEachern P.A.*, of Portsmouth (*Branch S. Sanders* on the brief and orally), for the plaintiffs.

*Steuk & Reams*, of Exeter (*Robert L. Steuk* and *James Shorthill* on the brief, and *Mr. Steuk* orally), for the defendant.

BATCHELDER, J. The defendant appealed a superior court decree awarding the plaintiffs damages for willful trespass to timber pursuant to RSA 539:1 (Supp. 1981). For the reasons set forth below, we affirm in part and reverse in part.

The plaintiffs, Walter J. and Dona Morrill, are owners of land in Newfields which abuts the property of the defendant, Robert Webb. In May 1978, the defendant employed Donald R. Tardy to harvest timber on the Webb property in Newfields. The defendant instructed Tardy where to cut, and on appeal the parties do not dispute that the defendant erroneously directed Tardy to cut on land belonging to the plaintiffs. The plaintiff Walter Morrill soon discovered that Tardy was cutting timber on land which Morrill claimed to own, and he informed the defendant and Tardy of that fact. Although the cutting ceased when Morrill advised the defendant and Tardy of his claim to the land on which they were cutting, the parties did not agree as to the location of their common boundary and the amount of damages due to the erroneous cutting.

The plaintiffs brought suit against the defendant and Tardy pursuant to RSA 539:1 (Supp. 1981) alleging willful trespass to timber for five times the actual damages caused by the cutting. Prior to the trial of this matter, Tardy paid the plaintiffs $1,000 in exchange for their covenant not to sue. The release executed by the plaintiffs, however, specifically reserved claims against the defendant Webb. The trial was bifurcated, and the Master (*Robert E. Carr*, Esq.) first heard evidence on the location of the boundary between the Morrill and Webb properties. The master's report found favorably to the plaintiffs and was approved by the Trial Court (*Bean*, J.). There was no appeal of that decision.

Evidence concerning the alleged willful trespass and damages was then heard by the master. After the hearing, which included a view of the property, the master found that the defendant was liable for willful trespass to the plaintiffs' timber under RSA 539:1 (Supp. 1981). The master determined that the actual damage to the plaintiffs' timber due to the defendant's willful trespass was $1,400. Applying the rule of damages pursuant to RSA 539:1 (Supp. 1981), the master quintupled the $1,400 figure and recommended an award of $7,000. The master's report was approved by the Trial Court (*Nadeau*, J.)

The defendant appealed, contending that because RSA 539:1 (Supp. 1981) is penal in nature the master erred in not applying the beyond-a-reasonable-doubt standard. He also claims that the facts were insufficient to support a finding of willful trespass under RSA 539:1 (Supp. 1981), and that the master erred in not reducing the damages by the $1,000 which the plaintiffs received from Tardy in settlement of their claim against him.

 An action for damages under RSA 539:1 (Supp. 1981) is civil in nature and does not require proof beyond a reasonable doubt. *Peaslee v. Koenig*, 122 N.H. 828, 830, 453 A.2d 832, 833 (1982). Accordingly, we find no merit to the defendant's contention that the master erred in applying the civil burden of proof standard.

We next turn to the defendant's argument that the evidence was insufficient to support the master's finding that the defendant had committed a willful trespass under the statute. RSA 539:1 (Supp. 1981) states: "Whoever shall cut . . . wilfully and unlawfully . . . any . . . timber . . . standing . . . on the land of another person . . . shall forfeit to the person injured, for every pine or other timber tree so cut . . . 5 times the value thereof; and shall be guilty of a misdemeanor."

 In order to be liable for quintuple damages under RSA 539:1 (Supp. 1981), it must appear that the party's trespass to timber was done knowingly and willfully, and not through accident or mistake. *Hynes v. Whitehouse*, 120 N.H. 417, 420, 415 A.2d 876, 877 (1980). Although willfulness and knowledge are sometimes difficult to prove, the trier of fact may draw reasonable inferences from the evidence to support such a finding. *Coutu v. State*, 123 N.H. 159, 161, 459 A.2d 236, 238 (1983). Where reasonable inferences may be drawn from the evidence to support a finding of willfulness, we will not disturb the findings merely because inferences drawn by the trier of fact are debatable. *Hynes v. Whitehouse*, 120 N.H. at 420, 415 A.2d at 877–78; rather we will uphold them unless they are

unsupported by the evidence or erroneous as a matter of law. *Gauthier v. Robinson*, 122 N.H. 365, 369, 444 A.2d 564, 566 (1982).

■■ In the instant case, the master viewed the property in question and found that the defendant ignored physical evidence which indicated where the defendant's boundary was located. Moreover, the master found that the defendant, who had had some experience in real estate, should have ascertained the location of his boundary so as to' prevent the wrongful harvesting of timber, and that there were plans and tax maps available from which he could readily have ascertained the boundary. The failure to make an inquiry to determine the ownership of land where the means of acquiring the knowledge are at hand is a sufficient basis for finding that a trespass and conversion of timber were willful. *Gray v. Alabama Fuel & Iron Co.*, 216 Ala. 416, 421, 113 So. 35, 40 (1926). Therefore, we will uphold the master's findings in the instant case on the issue of the defendant's willful trespass.

Finally, the defendant contends that the master erred in calculating damages, because both the common law and RSA 507:7-b (Supp. 1979) require that the amount of actual damages incurred as a result of the wrongful cutting be reduced by the amount the plaintiffs received in consideration of the covenant not to sue Tardy. The defendant argues that the court should have reduced the damages awarded by crediting the $1,000 against the $1,400 actual damages. and that the plaintiffs should have received an award of $2,000, based on the quintupling of the $400 actual damages.

We agree with the defendant that the $1,000 settlement should reduce the damages for which the defendant is liable; nevertheless, we do not accept his methodology for decreasing the award.

■■ When a release or a covenant not to sue is entered into with one joint tortfeasor, it does not discharge any of the other tortfeasors from liability, absent any expression to the contrary. *See* RSA 507:7-b (Supp. 1979). However, the settlement with one tortfeasor does reduce the claim against the others to the extent of the consideration paid for the release. RSA 507:7-b (Supp. 1979); *see also Burke v. Burnham*, 97 N.H. 203, 210, 84 A.2d 918, 924 (1951). The settlement between the plaintiffs and Tardy indicated that they were not releasing their claims against the defendant. If Tardy had not been released from liability by the settlement agreement, he would have been jointly and severally liable for the quintuple damages of $7,000 found pursuant to RSA 539:1 (Supp. 1981). Instead, he settled for $1,000. Accordingly, the $1,000 should have been set off against the "verdict" of $7,000 in this action and, consequently, the plaintiffs are entitled to an award of $6,000. *See Burke v. Burn-*

*ham*, 97 N.H. at 210, 84 A.2d at 924; 66 AM. JUR. 2d *Release* § 41, at 723 (1973).

*Affirmed in part and reversed in part.*

All concurred.