Rockingham
No. 84-413

ELENA B. WATERS & a.

v.

ARTHUR K. HEDBERG

May 24, 1985

*Engel & Morse P.A.*, of Exeter (*Mark S. Gearreald* on the brief and orally), for the plaintiffs.

*Sheehan, Phinney, Bass & Green P.A.*, of Manchester (*James E. Higgins* on the brief and orally), for the defendant.

BATCHELDER, J.  The question raised in this interlocutory appeal is whether the plaintiffs' release from liability of an employer, whose liability is based solely upon the negligence of an employee, bars a subsequent suit for negligence against the employee. The Master (*R. Peter Shapiro,* Esq.), in a recommendation approved by

the Superior Court (*Temple*, J.), denied the defendant/employee's motion to dismiss, ruling that the release of the employer was not a bar to the suit against the employee. We affirm the denial of the motion to dismiss.

This case arises out of an automobile accident which occurred in Exeter on June 9, 1980. The plaintiffs, Elena B. Waters and B. Gordon Waters, sued Prudential Insurance Company of America alleging that the negligent conduct of Arthur Hedberg, acting in his capacity as a Prudential employee and within the scope of his employment, caused the accident. No independent basis of liability other than the doctrine of respondeat superior was alleged against Prudential. Hedberg was not named in the suit. Prudential brought an indemnity action against Hedberg. Prudential's move to consolidate the indemnity action with the Waters' suit against it was denied.

The case against Prudential was tried, but before verdict the parties settled the case. The docket was marked, "Neither party. No costs. No further action for the same cause." Thereafter, the plaintiffs released Prudential and Prudential's liability insurance carrier from all claims regarding the accident, in exchange for a cash settlement substantially less than the damages claimed.

Following the settlement, plaintiffs sued Hedberg, alleging that his negligent operation of the motor vehicle caused the accident. Hedberg moved to dismiss on the ground that the suit was barred by the doctrine of res judicata and by the release of Prudential, his employer. The motion was denied on the ground that neither res judicata nor collateral estoppel barred the suit. The defendant appeals this ruling. The interlocutory appeal also raises the question of what effect the release granted to the employer has upon the suit against the employee, under RSA 507:7-b.

At the outset, we note that the *consent judgment* entered on the docket in settlement of the Waters' suit against Prudential, which states "Neither party. No costs. No further action for the same cause," is the relevant disposition for determining whether res judicata or collateral estoppel bars the suit against Hedberg. On the other hand, the *release* of Prudential by the Waterses is the document having legal significance under RSA 507:7-b.

■■ "The heart of the doctrine of res judicata is that a final judgment by a court of competent jurisdiction is conclusive upon the parties in a subsequent litigation involving the same cause of action." *Concrete Constructors, Inc. v. The Manchester Bank*, 117 N.H. 670, 672, 377 A.2d 612, 614 (1977). "The same result can follow from a consent judgment resulting in docket markings such as those

entered in this case." *Id.; Moore v. Lebanon*, 96 N.H. 20, 22, 69 A.2d 516, 518–19 (1949).

■ Defendant Hedberg was not a party to the consent judgment and is bound by the doctrine of res judicata only if he is in privity with a bound party. *Sanderson v. Balfour*, 109 N.H. 213, 214, 247 A.2d 185, 186 (1968); *see* R. WIEBUSCH, 5 NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 1870, at 389–90 n.52 (1984). The privity exception applies where the non-party's interests were in fact represented and protected in the litigation although he was not a formal party to the proceedings. M. GREEN, BASIC CIVIL PROCEDURE at 212 (1972). In this context, if the employee, though not a party to the suit, takes control of the suit, the judgment will bind the employee. M. GREEN, *supra at* 213; *cf. Eaton v. Clarke*, 80 N.H. 577, 578, 120 A. 433, 434 (1923).

■ In this case, Hedberg did not take control of the suit. He is, therefore, not protected under res judicata by the consent judgment entered. *See Moore v. Lebanon supra.*

■ Nor is Hedberg protected by the rules of collateral estoppel. The doctrine of collateral estoppel "precludes the relitigation of an issue of fact which has been fully and fairly litigated" in a prior action. *Loundsbury v. City of Keene*, 122 N.H. 1006, 1008, 453 A.2d 1278, 1280 (1982); *see* R. Wiebusch, *supra* § 1871, at 391–92. "[C]ollateral estoppel may be invoked . . . by a party to a later case who was not a party or in privity with a party to the earlier case." *Caouette v. Town of New Ipswich*, 125 N.H. 547, 554, 484 A.2d 1106, 1111 (1984). The party to be estopped, however, must have been a party or in privity with a party to the prior action. In this case, the "judgment" does not preclude litigation of any issues because the docket markings reflect a judgment for "neither party."

We next turn to the effect of RSA 507:7-b on the facts of this case. RSA 507:7-b provides as follows:

> "Release or Covenant Not to Sue: Joint Tortfeasors. When a release or covenant not to sue is given in good faith to one of 2 or more persons liable in tort for the same injury to person or property or for the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim against the others in the amount of the consideration paid for it."

In *Morrill v. Webb*, 123 N.H. 276, 461 A.2d 93 (1983), we interpreted this statute as follows:

> "When a release or a covenant not to sue is entered into with one joint tortfeasor, it does not discharge any of the other tortfeasors from liability, absent any expression to the contrary. *See* RSA 507:7-b (Supp. 1979). However, the settlement with one tortfeasor does reduce the claim against the others to the extent of the consideration paid for the release."

*Id.* at 279, 461 A.2d at 95 (citing *Burke v. Burnham*, 97 N.H. 203, 210, 84 A.2d 918, 924 (1951)).

In *Burke v. Burnham supra* we stated the prior law in New Hampshire:

> "'When one is injured by joint wrongdoers, a settlement with one of them is presumptively in full satisfaction for the injury . . . . But if the settlement with one is not intended as full satisfaction, the others are released only to the extent of the amount paid.'"

*Id.* at 210, 84 A.2d at 924 (quoting *Masterson v. Railway*, 83 N.H. 190, 192, 139 A. 753, 755 (1927)).

■ RSA 507:7-b, then, changes the prior law, so that now a release of one joint tortfeasor is presumed not to be a release of all, whereas previously, the release was presumed to release all unless a contrary intent was shown.

Several States have construed a statute similar to RSA 507:7-b found in the Uniform Contribution Among Tortfeasors Act § 4. For purposes of this case, the two statutes are functionally equivalent. We, therefore, do not hesitate to consider other States' interpretations of the Uniform Act § 4 for guidance in interpreting our statute.

Our interpretation of RSA 507:7-b is in accord with the interpretation of the Uniform Act § 4. In *Brown v. Pittsburgh*, 409 Pa. 357, 362, 186 A.2d 399, 402 (1962), the court observed that the Uniform Contribution Among Tortfeasors Act "drastically changed the [common] law on this subject and since that enactment a release by the injured party to one jointly liable does not release others also liable, unless the release expressly so provides." Similarly, in *Hayden v. Ford Motor Company*, 278 F. Supp. 267, 271 (D. Mass. 1967), the court noted that the Uniform Act had changed the prior law so that a release of one joint tortfeasor no longer released all others unless the intention to release all was found. *See also Smith v. Raparot*, 101 R.I. 565, 567–68, 225 A.2d 666, 667–68 (1967) (Uniform Act plainly and unambiguously changes common law rule).

The central question in this case is whether an employee and

employer *are* joint tortfeasors within the meaning of the release statute where the only basis of liability for the employer is the doctrine of respondeat superior. We have suggested that masters and servants who are jointly liable under respondeat superior are not true joint tortfeasors, but that liability for the servant's wrong is merely imputed to the master to give the aggrieved party redress. *See McNamara v. Chapman*, 81 N.H. 169, 172–74, 123 A. 229, 230–31 (1923). Hence, the master's liability is strictly derivative.

The weight of authority is that the Uniform Contribution Among Tortfeasors Act § 4 applies to persons whose liability is derived vicariously from the primary negligent conduct of another. *See Smith v. Raparot supra* (release of servant does not release master from liability under respondeat superior); *Blackshear v. Clark*, 391 A.2d 747, 748 (Del. 1978) (release of hospital/employer does not release doctor/employee); *Alaska Airlines, Inc. v. Sweat*, 568 P.2d 916, 929 (Alaska 1977) (release of independent contractor negligently performing licensed common carrier's non-delegable duty does not release carrier); *Wouldridge v. Zimmerman*, 21 Cal. App. 3d 656, 658–59, 98 Cal. Rptr. 778, 779 (1971) (release of owners for false representations of agent does not release agent).

Some cases under the Uniform Act are contrary. In *Kinetics, Inc. v. El Paso Products Co.*, 99 N.M. 22, 653 P.2d 522 (Ct. App. 1982), the court held that a partner, who was vicariously liable for the tort of a partnership, was released from liability when the partnership was released. *Id.* at 27, 653 P.2d at 527. The court reasoned that the liability of the partnership was direct and that that of the partners was merely imputed. *Id.* "Once the partnership was released, the means by which liability was imputed to the partners was destroyed." *Id.* The court held that under the Uniform Contribution Among Tortfeasors Act, the parties were not "joint tortfeasors," and that prior common law applied. *Id.* at 28, 653 P.2d at 528. *See also Witucke v. Presque Isle Bank*, 68 Mich. App. 599, 608–10, 243 N.W. 2d 907, 911–12 (1976) (construing statute somewhat different than the Uniform Act to determine that a master and servant are not joint tortfeasors because liability arises by operation of law, not wrongdoing).

We reject the reasoning of these latter cases for the reasons stated in *Blackshear v. Clark, supra* at 748:

> "The *basis* of liability is not relevant, nor is the relationship among those liable for the tort. In short, it makes no difference whether the [employer's] liability is based on the doctrine of *respondeat superior* or any other legal concept. The point is that both it and the [employee] are (at least) 'severally' liable for the same injury."

In interpreting a statute identical to New Hampshire's in that it does not define "joint tort-feasor," the Alaska Supreme Court has stated: "It may be that [the vicariously liable carrier] is not technically a 'tort-feasor,' but it is 'one of two or more liable in tort for the same injury.'" *Alaska Airlines v. Sweat, supra* at 930.

■ Our discussion is in accord with the policy underlying the adoption of RSA 507:7-b. Whereas the common law rule left a plaintiff with the option of settling with all tortfeasors or none at all, RSA 507:7-b permits settlement in part with some of those liable to him, while leaving the plaintiff free to seek the remainder of his recovery from others. In *Bishop v. Klein,* 380 Mass. 285, 294, 402 N.E.2d 1365, 1371–72 (1980), the court concluded that the Uniform Act "was drafted to encourage settlements in multiple party tort actions by clearly delineating the effect settlement will have on collateral rights and liabilities in future litigation." We think the same applies to RSA 507:7-b settlements. "The policy favoring termination of the litigation and encouraging settlement agreements should here prevail." *Alaska Airlines, Inc. v. Sweat,* 568 P.2d at 930.

The change from the common law reflected in RSA 507:7-b is amply justified by the strong public policy promoting resolution of civil suits and favoring the amicable settlement of litigation. *Cities Service Oil Company v. Coleman Oil Company, Inc.,* 470 F.2d 925, 929 (1st Cir. 1972), *cert. denied,* 411 U.S. 967 (1973).

Moreover, we find no compelling intent manifested by the use of the technically limited term "tortfeasor" in the title of RSA 507:7-b which would require us to disregard the plainly expansive language of the text of the statute. *See State v. Kilgus,* 125 N.H. 739, 742, 484 A.2d 1208, 1212 (1984).

The trial court's order denying the defendant's motion to dismiss is affirmed.

*Affirmed; remanded.*

All concurred.