2008 DNH 076

**Thomas SUTLIFFE et al.**

v.

**EPPING SCHOOL DISTRICT et al.**

**Civil No. 06–cv–474–JL.**

United States District Court,
D. New Hampshire.

April 4, 2008.

Charles G. Douglas, III, Benjamin T. King, Douglas Leonard & Garvey, Concord, NH, for Thomas Sutliffe et. al.

Charles P. Bauer, Daniel J. Mullen, Ransmeier & Spellman, Concord, NH, Diane M. Gorrow, Soule Leslie Kidder Zelin Sayward & Loughman, Salem, NH, for Epping School District et. al.

## *ORDER*

JOSEPH N. LAPLANTE, District Judge.

The defendants, who include municipal agencies, officials, and employees of the town of Epping, New Hampshire, have moved under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the bulk of the plaintiffs' second amended complaint, which alleges violations of their constitutional rights to free speech and equal protection. The defendants argue that the plaintiffs' claims are, variously, barred by res judicata, collateral and judicial estoppel, the *Rooker–Feldman* doctrine,[1] and the statute of limitations; have been brought by parties without standing; are not ripe; and fail to state a claim for relief.

---

**1.** *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *D.C.* *Ct. of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

Except as to those claims by plaintiffs who, as discussed *infra,* lack standing, this court has jurisdiction over this matter under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

The court heard oral argument on the motions to dismiss on March 25, 2008. For the reasons stated below, the motions are granted, except insofar as they seek dismissal of the claim that the Epping selectmen wrongfully required the plaintiff organization to disclose certain information about its membership and finances before the selectmen would consider allowing the organization to place a link to its website on the town's homepage.[2]

### Applicable Legal Standard

Under Rule 12(b)(6), "[a] complaint should not be dismissed unless it is apparent beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Stanton v. Metro Corp.,* 438 F.3d 119, 123–24 (1st Cir.2006) (internal quotation marks omitted). In ruling on a motion to dismiss, the court must accept the well-pleaded factual allegations of the complaint as true, drawing all reasonable inferences in the plaintiff's favor. *Id.* at 123.

█ Although res judicata, collateral and judicial estoppel, and the statute of limitations are affirmative defenses, they may be adjudicated on a motion to dismiss under Rule 12(b)(6).[3] *See, e.g., In re Sonus Networks, Inc. Shareholder Deriv. Litig.,* 499 F.3d 47, 56 (1st Cir.2007) (collater-

al estoppel); *Edes v. Verizon Comm'ns, Inc.,* 417 F.3d 133, 137 (1st Cir.2005) (statute of limitations); *Banco Santander de P.R. v. Lopez–Stubbe (In re Colonial Mtg. Bankers Corp.),* 324 F.3d 12, 15–16 (1st Cir.2003) (res judicata); *Payless Wholesale Distribs. v. Alberto Culver (P.R.), Inc.,* 989 F.2d 570, 571 (1st Cir.1993) (judicial estoppel). Consistent with Rule 12(b)(6) standards, however, dismissal can occur only when facts that "conclusively establish the affirmative defense" are "definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, or other matters of which the court may take judicial notice," including the records of prior judicial proceedings. *In re Colonial Mtg.,* 324 F.3d at 16.

## BACKGROUND

Plaintiff Thomas Sutliffe serves as the chairman of plaintiff organization Epping Residents for Principled Government, Inc. ("ERPG"), a self-described "perennial thorn in [the town's] side opposing its profligate spending." The plaintiffs occupy one side of an "ongoing political debate" with local officials over municipal spending. The plaintiffs take exception to the officials' using taxpayer-funded mailings and other communications to argue their side of the debate, while allegedly denying the plaintiffs access to those materials to present their dissenting views.

In advance of the 2005 town election, Sutliffe, on behalf of ERPG, complained to

---

**2.** This claim is alleged in paragraphs 55–60 of the second amended complaint.

**3.** A request for dismissal for lack of standing presents a question of federal subject-matter jurisdiction, placing the burden on the plaintiff to show that jurisdiction in fact exists; in assessing such a request at the pleadings stage, however, the liberal standards of Rule 12(b) apply. *See infra* Part I.A (standing). *Rooker–Feldman* works the same way. *See*

*Federacion de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.,* 410 F.3d 17, 20 (1st Cir.2005). In assessing a challenge to subject-matter jurisdiction based on ripeness—where the plaintiff also bears the burden—the truth of his factual allegations is not presumed. *See Coal. for Sustainable Res., Inc. v. U.S. Forest Serv.,* 259 F.3d 1244, 1249 (10th Cir.2001).

both the board of selectmen and the school board about publicly funded communications disseminated in connection with the prior year's vote, demanding that an equivalent "opportunity be afforded to those residents who hold a different point of view on matters advocated by [the] Board[s]" (internal quotation marks omitted). When the boards refused to comply, Sutliffe and ERPG (the "state-court plaintiffs") sued them, and their chairmen (the "state-court defendants"), in Rockingham County Superior Court.

The state-court petition, filed pro se, alleged that the school board had deprived ERPG of an opportunity to express its views in mailings sent during the prior month, as well as "numerous fliers sent home with the students." As an exhibit to the petition, the state-court plaintiffs attached a letter they had written to the school board complaining about materials they found objectionable in this regard, including the elementary school newsletter *Cool News,* which allegedly "advertised and sought to advance the political agenda of a private organization called The Advocates," together with "other one-sided political bulletins" distributed via the students and the mails.[4] The state-court plaintiffs also charged that the chairman of the school board and the police chief had illegally used the town's 2004 annual report to urge support for particular warrant articles at issue in the upcoming election. In its amended form, the petition claimed, *inter alia,* that this report, and its 2003 counterpart, violated the state and federal constitutions due to "unwarranted advocacy from a particular result on a particular warrant article," and sought a declaratory

judgment to that effect and an injunction against the practice.

The superior court held a bench trial on the state-court plaintiffs' claims on June 1, 2005. In support of their position, the state-court plaintiffs submitted a packet of documents, including: copies of the *Cool News* newsletter from February and March 2004; a mailing from the school board about the 2005–2006 school budget and certain warrant articles, sent just in advance of the 2005 election; photographs showing that blueprints and a model of a school addition up for consideration in the 2005 election had been placed at the polls; and a mailing from the board of the selectmen in advance of the 2004 election about warrant articles then up for consideration.

Though the superior court accepted these exhibits, it expressed concern about an "open-ended" proceeding where "every time someone sends out a letter, I have to decide." The court therefore announced that "the only thing I am going to decide is whether the material referenced in your original petition is legal; is legal or illegal to send that out. That's my determination." In response, the state-court plaintiffs explained that the exhibits were intended as

> some background basically on what transpired, because this all started in the year 2004. And in 2005, we were determined to ask that we be allowed to show opposing views.... We were denied that at all angles from the selectmen, the school committee, from any other planning board or conservation commission.

While the superior court "underst[ood] [this] position," it reiterated, "I am only going to address the denials that are con-

---

4. This letter, and a similar one from the state-court plaintiffs to the board of selectmen also attached to the petition, charged that such "abuse of public resources ... is pervasive; one might even say of epidemic proportions" among the town government and the school district.

tained in your petition." The state-court plaintiffs did not further object to this limitation or seek to amend their petition to seek relief from the additional communications.

The superior court issued a written order denying what it construed as the state-court plaintiffs' requests for relief as set forth in their amended petition. *Epping Residents for Principled Gov't, Inc. v. Epping Sch. Bd.*, slip op. at 1, No. 05–E–0094 (N.H.Super. Ct. June 15, 2005) ("*Superior Court Order*"). The court concluded that "the First Amendment does not prevent the School Board Chairman or the Police Chief from urging support for their governmental proposals in the Town and School Annual Report," *id.* at 5, because "the United States Supreme Court has made it clear that the government may use public funds to endorse its own measures," *id.* at 4 (citing *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 125 S.Ct. 2055, 161 L.Ed.2d 896 (2005)). The court also rejected the claim that the school board had violated the state-court plaintiffs' right to equal protection "by failing to publish opposing viewpoints in the annual report and other mailings," noting that they had "not presented evidence sufficient to demonstrate that the School Board impermissibly established classifications and therefore treated similarly situated individuals in a different manner." *Id.* at 5 (internal quotation marks omitted).

The state-court plaintiffs, still proceeding pro se, appealed the superior court's decision to the New Hampshire Supreme Court, which affirmed in an unpublished opinion. *Epping Residents for Principled Gov't, Inc. v. Epping Sch. Bd.*, slip op., No.2005–0600 (N.H. Oct. 6, 2006) ("*Supreme Court Opinion*"). First, the supreme court declined the state-court plaintiffs' request "to rule upon numerous statements by the [state-court defendants] upon which the trial court did not," invoking the "long-standing rule that parties may not have review of matters not raised in the forum of trial." *Id.* at 3. Observing that "the *only* statements upon which the trial court ruled were the statements made in the 2004 Town and School Annual Report," the supreme court explained, "If the [state-court plaintiffs] believed the trial court erred by confining its review ..., [they] should have raised this argument to the trial court in a motion for reconsideration." [5] *Id.* at 3–4. The supreme court further observed that the state-court plaintiffs' pro se status below did not excuse their failure to take this step. [6] *Id.* at 4.

Second, the supreme court noted that the state-court plaintiffs had conceded at oral argument before it that the challenged statements in the 2004 annual report were permissible; while maintaining that the other communications—on which the superior court had declined to rule—were unconstitutional, the state-court plaintiffs had acknowledged that the state defendants could lawfully use the annual report to "urge a yes vote" on the budget or "state that the town needed a new high school for particular reasons." *Id.* at 4 (internal quotation marks omitted). The supreme court therefore affirmed the superior court's ruling on that point. *Id.*

About two months after this decision, the state-court plaintiffs—represented by

---

**5.** Though the state-court plaintiffs had filed a motion for reconsideration with the superior court, they failed to include it in the record on appeal, *Supreme Court Opinion* at 4, but, in any event, the motion did not argue that the superior court had erred by confining its re-

view to the statements in the 2004 annual report.

**6.** The state-court plaintiffs had retained counsel by the time their appeal to the supreme court was briefed and argued.

counsel, and joined by Donald Sisson, who is also a member of ERPG—commenced the instant action in this court under 42 U.S.C. § 1983. They named as defendants the moderator of the Epping school district, the town's superintendent of schools, the principal of Epping Elementary School, and current and former members of the town's school board and board of selectmen, all of whom are sued in their official and individual capacities. Also named are the school district and the town itself.

The initial federal complaint alleged that the defendants had violated the plaintiffs' federal constitutional rights to free speech and equal protection through a number of actions, including: (1) distributing the *Cool News* publication in February and March 2004; (2) distributing other "promotional flyers" in 2004 and 2005; (3) using similar "advocacy mailers ... for at least a decade," from 2001 into the present; (4) placing favorable information about the proposed school addition at the 2005 polls, while the school district's moderator denied the plaintiffs an opportunity to present opposing views in that forum; (5) using a mailing from the town's board of selectmen to advocate in favor of certain warrant articles in the 2004 election; and (6) using a mailing from the town's conservation commission or planning board "to advocate a particular viewpoint in order to obtain an election result favoring their political positions" in each of the 2003 and 2004 elections. The plaintiffs seek a declaratory judgment that the defendants illegally "creat[ed] fora ... for the expression of their viewpoints regarding spending, while failing and refusing to allow [the plaintiffs] access to such fora in order to communicate their contrary viewpoints." The plaintiffs also request compensatory and punitive damages and attorneys' fees.

The defendants moved to dismiss the initial complaint, arguing that the plaintiffs' claims were barred in their entirety by res judicata and the *Rooker–Feldman* doctrine as a result of the outcome of the prior state proceedings. The plaintiffs objected, arguing that these doctrines did not apply because "the factual transactions at issue in the present case are completely different" from those in the state-court proceedings. The plaintiffs also announced that, in any event, they intended to amend their complaint to add plaintiffs who were not parties to the state court action, as well as allegations of "one-sided advocacy by the defendants in the 2006 Annual Report-a matter that the plaintiffs could not possibly have raised" before the state courts in 2005.

This court allowed the plaintiffs' proffered amendment over the defendants' protest that it would be futile, pointing out that such an objection would be "better addressed as an amendment to or a new motion to dismiss." The defendants accordingly revised and refiled their motion to dismiss, arguing that the new plaintiffs—Leo Grimard, Nancy Lee Grimard, and Renee Victoria, who have never been members of ERPG—lacked standing to assert the claims in the amended complaint, and that the new allegations were barred by collateral and judicial estoppel as a result of the state courts' decision—and the state-court plaintiffs' concession before the supreme court—that pro-spending advocacy in the annual reports was permissible. The plaintiffs objected and then, three months later, moved to amend their complaint again.

This time, the plaintiffs sought to add allegations that, in 2007, the selectmen refused to place a link to ERPG's website on the town's homepage, yet "allow outside groups whose views the town favors" to do so, including one known as "Speak Up,

Epping." When ERPG asked the selectmen for similar treatment, they allegedly asked the group to "provide, among other things, financial statements and a list of members and officers in order for the Town to consider" the request, which the plaintiffs say amounts to harassing and differential treatment on the basis of their political views. The proposed amendment adding these allegations was allowed, this time over the defendants' objection that they had not denied ERPG the privilege of linking to the town's website, but had "merely requested information about [ERPG] prior to placing a link." Based on this argument, the defendants now seek to dismiss this claim as unripe for adjudication. They have also renewed their arguments for dismissal of the first amended complaint.

## ANALYSIS

### I. *Res judicata*

■ The defendants argue that the plaintiffs' claims—except insofar as they arise out of the 2006 annual report and ERPG's access to the town's website—are barred by the res judicata effect of the judgment against the state-court plaintiffs, and its affirmance, in the New Hampshire courts. A federal court applies the law of the state whose courts issued the judgment in determining its preclusive effect. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Patterson v. Patterson*, 306 F.3d 1156, 1158 (1st Cir.2002). Under New Hampshire law, the doctrine of res judicata provides that a prior lawsuit precludes a subsequent one when (1) the parties or their privies in both actions are the same, (2) the cases present the same cause of action, and (3) the first action concluded with the issuance of a final judgment on the merits. *Meier v. Town of Littleton*, 154 N.H. 340, 341, 910 A.2d 1243 (2006). The plaintiffs argue that this lawsuit in-

volves neither the same plaintiffs nor the same cause of action as the state-court proceedings, and that those proceedings did not end with the entry of a final judgment on the merits, so res judicata cannot apply.

### A. *Same parties or privies, and standing to sue*

The plaintiffs maintain that res judicata cannot apply, because, as an initial matter, they are not the same parties as the state-court plaintiffs, who included only Sutliffe and ERPG. They do not contest, however, that Sisson, by virtue of his relationship with ERPG, stands in privity with it for res judicata purposes. *See, e.g., Gen. Foods Corp. v. Mass. Dep't of Public Health*, 648 F.2d 784, 788–89 (1st Cir.1981) (finding relationship between trade association and member sufficient to bind member to judgment against association, in absence of evidence that member objected to or was not adequately represented in litigation giving rise to judgment). The other plaintiffs here who did not appear in the state-court litigation are the Grimards and Victoria (the "new plaintiffs"), who allege "no affiliation" with EPRG. But the defendants argue that this gives rise to a different defect—that the new plaintiffs did not suffer any injury as a result of the challenged actions and therefore lack standing to bring the claims asserted.

"Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies'.... As an incident to the elaboration of this bedrock requirement, [the Supreme] Court has always required that a litigant have 'standing' to challenge the action sought to be adjudicated in the lawsuit." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). So-called "Ar-

ticle III standing," then, "requires that the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," among other elements. *Id.* at 472, 102 S.Ct. 752 (internal quotation marks omitted). To confer standing, the injury must be both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotation marks omitted).

■ The new plaintiffs suggest that they have suffered both actual and threatened injury to their constitutional rights at the hands of the defendants.[7] The second amended complaint, however, does not allege that the new plaintiffs participated in any of ERPG's efforts to include its views in the defendants' publicly funded communications, or that the new plaintiffs undertook similar efforts on their own behalf. So the pleading offers no basis for the assertion in the plaintiffs' objection that the defendants "have denied them access" to these fora so as to cause an actual injury.

■ As the plaintiffs rightly point out, a court faced with a challenge to standing at the pleading stage must "accept as true all material allegations of the complaint, and . . . construe the complaint in favor of the complaining party." *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d

343 (1975). While forgiving, this standard does not require the court to credit "empirically unverifiable conclusions, not logically compelled, or at least supported, by the stated facts" in the complaint. *Sea Shore Corp. v. Sullivan,* 158 F.3d 51, 54 (1st Cir.1998) (internal bracketing and quotation marks omitted). The factual allegations here not only fail to support the new plaintiffs' claim of actual injury, but undermine it—to dodge the potentially preclusive effect of the state-court judgment against the other plaintiffs, the new plaintiffs expressly disclaim any "affiliation with" ERPG, but only ERPG claims to have been denied access to the public fora in the ways described in the second amended complaint.

The new plaintiffs' argument for threatened injury is no sounder. They assert in their objection that, "just like the other plaintiffs," they "wish to participate in the tax-payer funded fora for the expression of views" described in the second amended complaint, characterizing this intention as "the inescapable implication of the allegations" therein. But, as just discussed, any such desire on the part of the new plaintiffs is hardly apparent from the face of the second amended complaint, which describes only the efforts of ERPG to that end. At oral argument, in fact, the plaintiffs conceded that the second amended complaint does not allege any desire on the part of the new plaintiffs to participate in the fora in question.[8] In any event, the

---

7. There is authority for "the standing of municipal residents to enjoin the 'illegal use of the moneys of a municipal corporation,' which relies on 'the peculiar relation of the corporate taxpayer to the corporation' to distinguish such a case from the general bar on taxpayer suits." *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 349, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006) (quoting *Massachusetts v. Mellon,* 262 U.S. 447, 486–87, 43 S.Ct. 597, 67 L.Ed. 1078 (1923)). But the plaintiffs ex-

pressly disavow that theory here, arguing that they have standing based on their *"free speech rights,"* rather than the expenditure of their tax dollars; in fact, they call *DaimlerChrysler* "readily distinguishable" on that basis.

8. At oral argument, the plaintiffs also suggested that they could simply move to amend their complaint "yet again" to allege the new plaintiffs' desires to this end. Without prejudging the merits of any such motion, this court would expect it to convincingly articu-

new plaintiffs' "desires," however laudable, are just that: desires. More is required to confer standing.

The Supreme Court has held that "[s]uch 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury" necessary for standing. *Lujan*, 504 U.S. at 564, 112 S.Ct. 2130; *see also Daggett v. Comm'n on Governmental Ethics & Election Practices*, 205 F.3d 445, 463 (1st Cir.2000) (ruling that plaintiffs lacked standing to challenge limits on campaign contributions based on lack of "specificity about future plans for contributions to display a real or even a threatened injury").[9] The new plaintiffs plainly lack standing to challenge the actions chronicled in the second amended complaint. For res judicata purposes, then, the only proper plaintiffs to this action are the same as (or, in the case of Sisson, in privity with) the state-court plaintiffs who suffered an adverse judgment in that forum.

This action also has additional defendants beyond those sued in the state court: while they included only the school and select boards and their chairmen, this law-

suit names individual board members, the town, the school district, and certain of its employees (the "new defendants"). The new defendants argue that they can assert res judicata, despite its "same parties" requirement, because they "had their interests represented and protected" by the state-court defendants in that proceeding. *See Waters v. Hedberg*, 126 N.H. 546, 549, 496 A.2d 333 (1985). The First Circuit has observed that, because "the application of res judicata ... in New Hampshire[ ] is no longer grounded upon mechanical requirements of mutuality," certain non-parties to a judgment may invoke its res judicata effect. *Fiumara v. Fireman's Fund Ins. Cos.*, 746 F.2d 87, 91–92 (1st Cir.1984). These include parties sued for their actions as agents of principals who successfully defended a prior suit based on their conduct, and who are thus "persons in privity" for res judicata purposes. *Id.*

■ Here, the state-court proceedings—though lodged against the boards and their chairmen only—arose out of the actions of the new defendants, including the board members themselves, the superintendent, the moderator, and the principal.[10] While, as discussed *infra*, the plain-

late why the second amended complaint does not itself contain these allegations, given that it was filed after the defendants had already challenged the new plaintiffs' standing.

9.  *Osediacz v. City of Cranston*, 414 F.3d 136 (1st Cir.2005), on which the plaintiffs heavily rely, does not support their contrary view that "desires" suffice to confer standing. As the court of appeals explained at length in that case, that a party "desired or intended to undertake activity" can suffice to show standing *only* for "certain types of facial challenges to statutes, ordinances, regulations, or governmental policies ... on First Amendment grounds" due to their potential chilling effect. *Id.* at 140–41. This lawsuit, which seeks relief from the defendants' alleged practice of excluding competing views from publicly funded fora, does not present such a facial

challenge (except insofar as it arises out of the alleged refusal to consider allowing a group to place a link on the town website without first identifying its members and providing financial and other information, and that claim, by its nature, belongs only to a group or its members, not unaffiliated individuals). *Osediacz* is therefore inapposite.

10.  Conversely, the boards and their chairmen were sued in state court for actions they took on behalf of the school district and the town, so those new defendants are also in privity with the state-court defendants under *Fiumara*. *See also Garcia v. Village of Mt. Prospect*, 360 F.3d 630, 635–37 (7th Cir.2004) (finding village in privity with village pension board named as defendant to prior action); *Kudaroski v. Hellmuth*, 31 Fed. R. Serv.2d 1287,

tiffs contend that the superior court did not decide whether each instance of this conduct amounted to a constitutional violation, they do not argue that this fact has any bearing on whether the new defendants—as opposed to the state-court defendants—can seek solace in the state-court judgment. In fact, the plaintiffs do not dispute that the mutuality requirement of res judicata is satisfied as far as the identity of the defendants is concerned.

The court concludes that, under New Hampshire res judicata principles as illuminated by the First Circuit, the new defendants can raise the res judicata effect of the state-court proceeding as a defense to this one. *See Town of Seabrook v. New Hampshire*, 738 F.2d 10, 11 (1st Cir.1984) (applying New Hampshire law) (naming officials of state commission as defendants to second suit did not avoid res judicata effect of first suit against commission itself); *Burgess v. Bd. of Trs., Univ. of N.H.*, No. 94–338–JD, 1995 WL 136930, at *8 (D.N.H. Mar.28, 1995) (naming state university employees as defendants to second suit did not avoid res judicata effect of first suit against university), *aff'd*, 70 F.3d 110, 1995 WL 686110 (1st Cir.1995) (unpublished opinion).

**B.** *Same cause of action/final judgment on the merits*

■ The plaintiffs also argue that the prior lawsuit has no res judicata effect over the current one because the "cause of action" has changed. "In determining whether two actions are the same cause of action for purposes of applying res judicata, [New Hampshire] consider[s] whether the alleged causes of action arise out of the same transaction or occurrence." *In re Univ. Sys. Of N.H. Bd. Of Trs.*, 146 N.H. 626, 629 (2002) (citing *Restatement (Sec-*

*ond) of Judgments* § 24 (1982)). Since the state-court proceedings dealt only with the statements in the 2004 annual reports, the plaintiffs argue, they arose out of different transactions and occurrences from those at issue here, e.g., the distribution of the *Cool News* publication and other materials by the school system, the placement of information supporting the school addition at the 2005 polls, and the use of mailings by the board of selectmen and other local boards to advocate for their views in the 2003–2005 elections, all to the exclusion of the plaintiffs. In fact, the plaintiffs point out, they seek no relief from the 2004 annual reports in this action.

■ This argument depends on too narrow a view of both the state-court proceedings and the "same transaction or occurrence" requirement of res judicata. Under New Hampshire law, the doctrine "bars the relitigation of any issue that was, or *might have been,* raised in respect to the subject matter of the prior litigation.... The claim extinguished includes all rights to remedies with respect to all or any part of the transaction, or *series of connected transactions,* out of which the [first] action arose." *Grossman v. Murray*, 141 N.H. 265, 269, 681 A.2d 90 (1996) (*quoting Dennis v. R.I. Hosp. Trust Nat'l Bank,* 744 F.2d 893, 898 (1st Cir.1984)) (second emphasis added). Though "'transaction' is not always easy to define with precision," *Patterson,* 306 F.3d at 1159 (applying New Hampshire law), any practical formulation of the concept is broad enough to include all of the events alleged in the second amended complaint which had occurred by the time of the state-court trial—not just the statements in the 2004 annual reports specifically alleged in the state-court petition. The *Re-*

1289 (D.Mass.1981) (finding city in privity with officers of municipal foundation named

as defendants to prior action), *aff'd without op.,* 676 F.2d 683 (1st Cir.1982).

*statement,* to which the New Hampshire Supreme Court has frequently looked in shaping its own principles of res judicata, *see Patterson,* 306 F.3d at 1160, teaches that a "transaction, or series of connected transactions" in this context includes facts sharing "relatedness in time, space, origin, or motivation" and "form[ing] a convenient unit for trial purposes." *Restatement (Second) of Judgments* § 24, cmt. *b* (1982). These characteristics are common to the challenged statements in the 2004 annual report and the various other examples of what the plaintiffs grieve here: the defendants' use of publicly funded fora to argue their own views at the exclusion of the plaintiffs'. Indeed, at the superior court trial, the plaintiffs themselves sought to characterize the report as but one symptom of a larger affliction, arguing that their proffered evidence of the other allegedly slanted media showed how they were "denied at all angles from the selectmen, the school committee, from any other planning board or conservation commission." [11]

So the plaintiffs cannot now, through the simple device of omitting any reference to the 2004 annual report from the second amended complaint, turn the statements in the report into a separate "transaction" for res judicata purposes. This is particularly true when the plaintiffs group all of the defendants' other challenged actions into a unified course of conduct in the second amended complaint, claiming that they "violated the plaintiffs' First and Fourteenth Amendment rights by opening fora for the expression of views on spending through" the particular means described, "while the . . . defendants failed and refused to allow the plaintiffs to express their contrary views regarding spending through such taxpayer funded fora." The plaintiffs thus allege that the same group of defendants in the same town have repeatedly violated the same rights of the same citizens through multiple instances of similar conduct; the 2004 annual report does not differ from that conduct in terms of "time, space, origin, or motivation" in any meaningful way. *See Restatement (Second) of Judgments* § 24 cmt. *d* (1982) ("acts which though occurring over a period of time were substantially of the same sort and similarly motivated . . . constitute but one transaction or a connected series").

This court agrees with the defendants that, with two exceptions,[12] the second amended complaint arises out of the same "transaction or series of transactions" as did the state-court action. *See Havercombe v. Dep't of Educ.,* 250 F.3d 1, 5–6

---

11. In addition, the state-court petition itself complained about advocacy in mailings and "numerous fliers sent home with the students," including—by reference to the letters attached to the petition—the *Cool News* publication.

12. The first exception is the 2006 annual report, as to which the defendants do not assert res judicata, but might have; the state courts ruled that the state-court defendants had permissibly advocated their official positions on spending in the 2004 annual report, so they would have been expected to act accordingly in future reports. A number of authorities hold that, "[w]here the object of the first proceeding is to establish the legality of continuing conduct into the future, a second ac-

tion is precluded by the first judgment." *Schneider v. Colegio de Abogados de P.R.,* 546 F.Supp. 1251, 1272 (D.P.R.1982) (Torruella, J.); *see also, e.g., Huck ex rel. Sea Air Shuttle Corp. v. Dawson,* 106 F.3d 45, 49 (3d Cir. 1997); 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4409, at 232 (2d ed.2002). This court need not decide whether res judicata bars the plaintiffs' claims based on the 2006 report, however, because those claims are barred by collateral estoppel. *See* Part II, *infra.* The second exception is the claim over EPRG's access to the town's website, as to which the defendants also do not assert res judicata, but seek to dismiss as unripe. *See* Part III, *infra.*

(1st Cir.2001) (ruling that prior action alleging "pattern of discrimination" barred subsequent action alleging similar pattern, but over broader period of time, where plaintiff claimed that "all of these events were directly related to each other in terms of motivation and common purpose," thus comprising a " 'transaction' or 'series of connected transactions' " under the *Restatement* ); *Waldman v. Village of Kiryas Joel,* 207 F.3d 105, 110–11 (2d Cir.2000) (ruling that prior action claiming constitutional violations by village involved same "transaction or series of transactions," under the *Restatement,* as later suit where plaintiff "viewed the various components of the overlapping facts as part of the same pattern of behavior").

The plaintiffs protest that, because both the superior court and the supreme court refused to pass on the legality of any of the defendants' conduct aside from the statements in the 2004 annual report, the "transaction" encompassed by those proceedings could not have included any of that other behavior. This argument confuses the concepts of res judicata—or "claim preclusion"—and collateral estoppel—or "issue preclusion." As the New Hampshire Supreme Court explained long ago:

> There is a difference sometimes overlooked between the effect of a judgment as a bar to the prosecution of a second action for the same cause, and its effect as an estoppel in another suit between the same parties upon a different cause of action. In the former case [under res judicata principles], a judgment on the merits is an absolute bar to a subsequent action: it concludes the parties, not only as to every matter which was offered and received to sustain or to defeat the suit, but also as to *any other matter which might have been offered for that purpose.* But in the latter case [under collateral estoppel principles], the

judgment in the prior action operates as an estoppel only as to those matters which were then directly in issue, and either admitted by the pleadings or actually tried.

*Metcalf v. Gilmore,* 63 N.H. 174, 189 (1884) (emphasis added and bracketed language). By limiting their decisions to the legality of the 2004 annual report, then, the state courts did not likewise limit the res judicata—as opposed to the collateral estoppel—effect of their judgment. Indeed, "a subsequent suit based upon the same cause of action as a prior suit is barred 'even though the plaintiff is prepared in the second action . . . to present evidence or grounds or theories of the case not presented in the first action.' " *E. Marine Constr. Corp. v. First S. Leasing, Ltd.,* 129 N.H. 270, 275, 525 A.2d 709 (1987) (quoting Restatement (Second) of Judgments § 25 (1980)).

■ The plaintiffs' argument—forcefully presented at oral argument—that the state courts did not issue a "final judgment on the merits" as to claims based on conduct beyond the 2004 annual report rests on the same misconception. Under the doctrine of res judicata, "an entire claim may be precluded by a judgment that does not rest on any examination whatever of the substantive rights asserted." 18A Wright, *supra,* § 4435, at 134. That much is clear from the many decisions of the New Hampshire Supreme Court according res judicata effect to judgments based on a party's default, failure to follow procedural rules, or other reasons having nothing to do with the "merits" of the suit. *See, e.g., McNair v. McNair,* 151 N.H. 343, 353, 856 A.2d 5 (2004) (explaining that, while collateral estoppel cannot follow from a default judgment because "none of the issues is actually litigated, . . . [a] default judgment can, however, constitute res judicata with respect to a subsequent litigation involving

the same cause of action"); *Barton v. Barton*, 125 N.H. 433, 434–35, 480 A.2d 199 (1984) ("a default judgment entered because of the plaintiff's failure to answer interrogatories operates as a judgment 'on the merits'" for res judicata purposes); *Innie v. W & R, Inc.*, 116 N.H. 315, 316, 359 A.2d 616 (1976) ("The default judgment ... was a final judgment on the merits....").

Nor is the preclusive effect of the state-court judgment diminished because the plaintiffs there were rebuffed in their efforts to introduce evidence of conduct beyond the 2004 annual report when the superior court ruled that their petition was limited to that particular event.[13] "It is immaterial that the plaintiff in the first action sought to prove the acts relied on in the second action and was not permitted to do so because they were not alleged in the complaint and application to amend the complaint came too late." *Restatement (Second) of Judgments* § 25 cmt. *b* (1980); *see also Brzica v. Trs. of Dartmouth Coll.*, 147 N.H. 443, 455, 791 A.2d 990 (2002). Here, the state-court plaintiffs did not even go so far as to move to amend their petition to seek relief from the defendants' additional conduct. Res judicata principles "put[ ] some pressure on the plaintiff to present all his material relevant to the claim in the first action," *Restatement (Second) of Judgments* § 25 cmt. *a* (1982) and, when he or she fails to do so, preclu-

sion of the entire cause of action can follow even though that material, however relevant, was never considered.[14] *See, e.g., Fiumara*, 746 F.2d at 91–92.

Here, as in *Fiumara*, "all of the events which define the federal complaint"— again, excepting the 2006 annual report and ERPG's alleged denial of access to the town's website, as to which res judicata has not been raised—"occurred in the period before the state trial and were at least generally hinted at in that trial. If they were not litigated as hotly as the plaintiff[s] would now wish, they plainly could have been." *Id.* at 91. They can be litigated no longer. The plaintiffs have "already had one bite at the apple, and the choice of the bite was [theirs]." *Id.* (internal quotation marks omitted).

At oral argument, the plaintiffs emphasized what they perceive as the unfairness of this outcome, pointing out that no court has ever ruled on the constitutionality of a number of the defendants' actions—particularly their sending the allegedly political content of the elementary school newsletter home with its students, which the plaintiffs suggested this court would have no choice but to find unconstitutional if presented with the question. The plaintiffs also reminded this court of the importance of First Amendment rights in our constitutional system. But neither the

---

**13.** As the preceding discussion suggests, this narrow reading of the petition is perhaps debatable, because it did at least refer to examples of the defendants' allegedly one-sided advocacy aside from the 2004 annual report. Regardless, the state-court plaintiffs' remedy from any error by the superior court as to the scope of their petition was to appeal that ruling to the supreme court—which they did, albeit unsuccessfully, when the supreme court determined that they had not preserved their objection. They cannot now seek relief by initiating a second lawsuit independently grieving the conduct the superior court de-

clined to consider. *See ERG, Inc. v. Barnes*, 137 N.H. 186, 190, 624 A.2d 555 (1993).

**14.** This can happen even though, as here, a plaintiff did not have the benefit of counsel in the prior proceedings, *see, e.g., Cieszkowska v. Gray Line N.Y.*, 295 F.3d 204, 206 (2d Cir. 2002), so the outcome is yet another testament to the perils of self-representation. "[A] party who tries his own case is like a man cutting his own hair—in a poor position to appraise what he is doing." *Carr v. FTC*, 302 F.2d 688, 690 (1st Cir.1962).

strength of a claim, nor the weight of the rights it seeks to vindicate, can have any effect on the res judicata analysis, because the doctrine "serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case," *viz.*, "that there be an end of litigation." *Federated Dep't. Stores, Inc. v. Moitie*, 452 U.S. 394, 401, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) (internal quotation marks omitted). In that case, the Supreme Court reversed a lower court's refusal to apply res judicata based "on what it viewed as 'simple justice,'" opining, "'simple justice' is achieved when a complex body of law developed over a period of years is evenhandedly applied." *Id.*

Since the Court's decision in *Moitie*, departure from the body of established res judicata principles "cannot now be justified simply by concluding that it is harsh to deny an apparently valid claim for failure to appeal a wrong decision or other misstep, or by balancing the values of res judicata against a desire for right outcomes." 18 Wright, *supra*, § 4415, at 380. Indeed, this court need look no further than one of its own recent decisions for a particularly forceful example of this reality. *See Est. of Sullivan v. Pepsi–Cola Metro. Bottling Co.*, 2004 DNH 014, 2004 WL 67935 (Jan. 15, 2004).

There, this court ruled that, when the superior court had dismissed the plaintiffs' action for the wrongful death of their teenaged son because their attorney had not filed it until three days after the statute of limitations expired, then denied their motion to add claims with a longer limitations period—a decision which the plaintiffs' attorney did not appeal—New Hampshire res judicata principles barred the plaintiffs from bringing those claims here. *Id.* at 3,

2004 WL 67935, *1. This court observed that its order

> result[ed] in the denial of [the plaintiffs'] claims against the original defendants without any determination of whether they are responsible for [their son's] death. The court is sensitive to the fact that this outcome may seem unfair to the plaintiffs, particularly given the tragic circumstances alleged in this case. This decision, however, is dictated by the application of long-established rules designed to make the judicial process fair to all participants.

*Id.* at 12, 2004 WL 67935, *5. As the *Sullivan* decision makes painfully clear, the application of those rules simply cannot depend on how "important" a plaintiff deems his claim to be. *See also Friarton Ests. Corp. v. City of N.Y.*, 681 F.2d 150, 158 (2d Cir.1982) ("it is immaterial that the questions [are] constitutional in character" for res judicata purposes). The defendants' motion to dismiss the plaintiffs' claims insofar as they do not arise out of the 2006 annual report or the denial of access to the website is granted on res judicata grounds.[15]

## II. *Collateral estoppel*

The defendants also argue that the plaintiffs' claim premised on the use of the 2006 annual report for allegedly one-sided advocacy is barred by collateral and judicial estoppel as a result of the state courts' decision—and the state-court plaintiffs' concession at oral argument before the New Hampshire Supreme Court—that pro-spending advocacy in the 2004 annual report was permissible. Because this court concludes that the state courts' rulings collaterally estop the plaintiffs from the constitutional challenges to the 2006

**15.** The court therefore need not reach the defendants' overlapping *Rooker–Feldman* argument, or their statute of limitations defense.

annual report launched in this action, it need not reach the judicial estoppel argument.

■ As noted previously with respect to res judicata, *supra* Part I, New Hampshire's state law doctrine of collateral estoppel is controlling. *See Migra*, 465 U.S. at 81, 104 S.Ct. 892; *Patterson*, 306 F.3d at 1158. For collateral estoppel to apply, (1) the issue subject to estoppel must be identical in each action, (2) the first action must have resolved the issue finally on the merits, and (3) the party to be estopped must have appeared as a party in the first action, or be in privity with someone who did. *Stewart v. Bader*, 154 N.H. 75, 80–81, 907 A.2d 931 (2006). This court has already rejected the plaintiffs' argument that, because they are differently constituted than the state-court plaintiffs, the judgment in that system can have no preclusive effect. *See* Part I.A, *supra*. The plaintiffs further argue, as also discussed *supra*, that the state courts refused to rule on any of the defendants' conduct but the statements in the 2004 town report, so the issues here are not identical to those decided there.

This argument is misplaced. "The only case a court can ever try is the one before it, and the application of collateral estoppel depends not on a party's opportunity to join extraneous issues for trial in an earlier case, but on the identity of issues as between actions or suits tried at different times." *Metro. Prop. & Liab. Ins. Co. v. Martin*, 132 N.H. 593, 598, 574 A.2d 931 (1989). Thus, because the defendants do not urge collateral estoppel as to any of the issues presented by the second amended complaint but the constitutionality of the 2006 annual report, the only question is whether the state courts decided that issue in the prior proceedings. They clearly did.

■ The superior court rejected the state-court plaintiffs' claim "that the First Amendment ... prohibits the use of public funds to promote one-sided viewpoints on ballot issues unless the forum also allows opposing viewpoints," ruling that "the government may use public funds to endorse its own measures." *Superior Court Order* at 4. That court also determined that the state-court plaintiffs had not proven that, in "failing to publish opposing viewpoints in the annual report and other mailings," the school board had "established classifications and, therefore, treated similarly situated individuals in a different manner" in violation of the equal protection clause of the Fourteenth Amendment. *Id.* at 5. These conclusions were affirmed on appeal. *Supreme Court Opinion* at 4. So the state courts resolved one of the same issues presented by the second amended complaint here: whether the school district violated the plaintiffs' First Amendment and equal protection rights by excluding their views on warrant articles from an annual report, while nevertheless using that taxpayer-funded communication to promote an opposing view.[16]

The fact that the state courts decided the propriety of the 2004 annual report, while this action challenges the propriety of the 2006 annual report, does not render the issues dissimilar for collateral estoppel purposes; that would require the objectionable nature of the newer report to "differ in [some] significant respect from the old." *Pignons S.A. de Mecanique v. Polaroid Corp.*, 701 F.2d 1, 2 (1st Cir.1983) (Breyer, J.). There is no reason to be-

---

16. There is no indication that the state courts' rulings depended on the particular nature of the statements in the 2004 report; as just mentioned, the case was resolved on the broader proposition that the report was a permissible exercise of a government's ability to use public monies to promote its own initiatives.

lieve, even when the allegations of the second amended complaint are taken as true and augmented with all reasonable inferences in the plaintiffs' favor, that the 2006 annual report can be distinguished from the 2004 annual report in any meaningful sense. The plaintiffs conceded at oral argument, in fact, that the reports were not different.

"[A] plaintiff cannot avoid the bar of collateral estoppel simply by suing a defendant for continuing the same conduct that was found to be lawful in a previous suit brought by the same plaintiff." *Ramallo Bros. Printing Inc. v. El Dia, Inc.*, 490 F.3d 86, 91–92 (1st Cir.2007) (finding antitrust claim based on defendant newspaper's latest refusal to carry inserts printed by plaintiff collaterally estopped by decision upholding defendant's prior refusal to carry plaintiff's insert on the same grounds). By virtue of the unfavorable decisions of the state courts as to the 2004 annual report, the plaintiffs are collaterally estopped from challenging the validity of the 2006 annual report.[17]

## III. *Ripeness*

Finally, the defendants argue that the plaintiffs' claim arising out of ERPG's access to the town website is not ripe for adjudication because "[a]t this point in time, the Town ... has not denied the organization ... a link to their website on the Town's website. All that has happened is that the Town has sought information regarding the organization." The plaintiffs complain, however, that it is precisely by demanding information about ERPG's membership and finances as a condition to considering its request to place the link that the selectmen have violated the plaintiffs' rights under the First Amendment and equal protection clause.

The plaintiffs' claim, then, arises not from any outright denial of ERPG's request to place the link, but from what the selectmen have allegedly required ERPG to do before they will even consider its request. "Determining ripeness requires evaluation of 'both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Mangual v. Rotger–Sabat*, 317 F.3d 45, 59 (1st Cir.2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). The plaintiffs' claim readily meets both of these criteria. Because they have been told that ERPG cannot place a link on the town's website without submitting to what they consider unconstitutional requirements, their claim in no way "involves uncertain and contingent events that may not occur as anticipated or may not occur at all," and resolving it "would be of practical assistance in setting the underlying controversy to rest." *Ernst & Young v. Depositors Econ. Protection Corp.*, 45 F.3d 530, 536–37 (1st Cir.1995) (internal quotation marks omitted). The defendants' motion to dismiss this claim on ripeness grounds is denied.

## CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss the second amended complaint (document nos. 53 and 55) are GRANTED, except insofar as they seek dismissal of the plaintiffs' claim arising out of the selectmen's alleged refusal to allow EPRG to place a link to its website on the town's home page without first disclosing certain information about its finances and membership. Because this claim lies against the town and the select-

---

**17.** This court therefore need not reach the defendants' arguments that the allegations of the second amended complaint as to the 2006 report fail to state a claim for relief.

men only, the remaining defendants—the school district, its moderator and superintendent, the members of the school board, and the principal of the elementary school—are dismissed from the case. Plaintiffs Leo Grimard, Nancy Lee Grimard, and Renee Victoria are also dismissed from the case, because they lack standing to assert the remaining claim.

**SO ORDERED.**